# IN THE SUPREME COURT OF IOWA

No. 11–1986

Filed March 23, 2012

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

      Complainant,

vs.

**JAMES A. SCHALL,**

      Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

In an attorney disciplinary proceeding, the Grievance Commission recommends a public reprimand. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Mark McCormick of Belin McCormick, P.C., Des Moines, for respondent.

**HECHT, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against the respondent, James A. Schall, alleging violations of several ethical rules as a consequence of his failure to file state income tax returns and his mishandling of a client's criminal case. A division of this court's grievance commission held a hearing, found Schall violated several rules, and recommended the court impose a public reprimand.[1] Upon our de novo review, we find Schall's conduct violated ethical rules. We suspend his license to practice law indefinitely with no possibility of reinstatement for a period of six months.

### I.  Scope of Review.

Our review of this matter is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 527 (Iowa 2011). It is the Board's burden to prove ethical violations by a convincing preponderance of the evidence. *Id.* at 528. We may impose a greater or lesser sanction than the one recommended by the commission. *Id.*

### II.  Findings of Fact.

**A. Failure to Pay State Income Taxes.**  Schall graduated from law school in 1967. After working as a trust officer for six months, he associated in private practice with another attorney in Storm Lake. In the mid-1970s, Schall established his own law firm in that community. In addition to his private practice of law, Schall served as a part-time judicial magistrate for sixteen years in Buena Vista County. Thereafter, approximately seventy-five percent of Schall's practice consisted of criminal law cases.

---

[1]Four panel members voted to recommend a public reprimand and one member favored a "short suspension" of Schall's license to practice law.

Schall's wife suffered from multiple sclerosis, and for the five years preceding her death in 2003, Schall was her primary caregiver. During a significant part of this period, she was bedridden or in a wheelchair. After surgery to control MS-related muscle spasms, Mrs. Schall was transferred to a nursing home at Newell. During the remainder of her life, Schall spent his noon hours, evenings, and weekends at the nursing home. His law practice was disrupted, requiring continuances of legal matters and resulting in many interruptions during work days to manage Mrs. Schall's all-consuming health problems. Schall himself was diagnosed with prostate cancer in 2004 and was treated for this illness as he continued to deal with his wife's death. Schall was unable to afford health insurance coverage and became uninsured.

Schall failed to file state income tax returns for 1999, 2000, 2001, 2002, 2004, and 2005.[2] After his failure to file the returns was discovered, Schall substantially underreported his income for 2002, 2004, and 2005. He eventually pled guilty on April 20, 2010, to three aggravated misdemeanor counts of fraudulent practice in the third degree for failing to timely file the tax returns for 2002, 2004, and 2005. The other counts of the criminal information filed against him were dismissed consistent with a plea agreement. The sentencing court deferred judgment, placed Schall on probation for two years, imposed a civil penalty of $6250, and ordered him to pay the costs of the action and perform one hundred hours of pro bono legal work as community service. Schall paid the fine and costs and completed the community service prior to the hearing before the commission in this case.

---

[2]The Board's complaint alleged ethical violations, however, only for Schall's failure to file returns in 2002, 2004, and 2005. Accordingly, we find violations and impose discipline only for ethical misconduct for failing to file returns for those years.

**B. The Tesene Matter.** Schall was appointed to represent Justin Tesene in a felony theft case filed on March 15, 2010. Schall learned of his appointment when he picked up Tesene's financial affidavit in the office of the clerk of district court. Although Tesene, who was at that time in prison serving a five-year sentence for another felony crime, had indicated in a letter to the clerk of court filed April 12, 2010, that he wished a speedy trial, Schall did not receive a copy of the letter when he picked up the client's financial affidavit at the clerk's office. Phone calls from Tesene's parents informed Schall that Tesene wished a quick resolution of the pending matter by a plea to a misdemeanor.

Schall believed he might be able to negotiate a plea agreement calling for Tesene's guilty plea to a misdemeanor and a sentence concurrent to the one Tesene was then serving. Schall prepared and mailed a written arraignment and plea of not guilty form to Tesene at his prison address. Schall had filled in certain information on the form indicating Tesene wished to waive his right to a speedy trial. Schall's cover letter instructed Tesene to review the form, sign it before a notary public, and return it to Schall's office.

Tesene altered the written arraignment and plea of not guilty form by crossing out the provision purporting to waive his right to a speedy trial. He signed the document—but not before a notary public—and returned it to Schall with a handwritten cover letter. The cover letter made reference to the fact that Tesene had changed the speedy trial portion of the document to delete the waiver provision.[3]    Schall

---

[3]Schall's answer to the Board's disciplinary complaint denied receiving this cover letter from Tesene, but Schall subsequently admitted its receipt during testimony before the commission. Schall testified he simply "missed" Tesene's expression of the desire for a speedy trial in the cover letter and continued to assume Tesene wished a prompt resolution of the matter through a negotiated plea bargain.

subsequently revised the document in his own handwriting without Tesene's permission by adding back language waiving the right to a speedy trial. Before filing the document with the court, Schall notarized Tesene's signature without having witnessed the signing and signed the form attesting he had discussed the substance of the form with Tesene who "fully understood its contents." After Tesene sent Schall another handwritten letter dated June 14, 2010, demanding a speedy trial, Schall prepared a demand for a speedy trial and filed it a week later.

Tesene filed a pro se motion on July 22, 2010, requesting dismissal of the case on the ground his right to a speedy trial had been violated. At the hearing on Tesene's pro se motion, Schall informed the court that he had not received Tesene's handwritten request for a speedy trial sent to the clerk of court in April and further represented to the court that he first learned of his client's desire shortly before filing the speedy trial demand on June 21. After Tesene's pro se motion to dismiss on speedy trial grounds was denied on the ground Tesene had filed a valid written waiver of his right to a speedy trial, Schall filed a motion to reconsider asserting the court had mistakenly found the handwritten waiver was on the form when Tesene signed it. This caused the county attorney to file another resistance, and the court entered yet another ruling on the matter confirming its earlier ruling denying the motion to dismiss.

Schall's mishandling of the criminal matter resulted in Tesene's request for new counsel. New counsel was appointed for Tesene, and a second motion to dismiss on speedy trial grounds was filed—this one based on Schall's June 21 demand for speedy trial. This second motion was granted.

### III. Analysis.

Schall admitted in his answer to the Board's complaint that he failed to file his state income tax returns for the years 2002, 2004, and 2005. Under the disciplinary rules in force at the time the 2002 and 2004 returns were due, Schall's failure to file the returns constituted violations of DR 1–102(A)(3) (illegal conduct involving moral turpitude), DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and DR 1–102(A)(6) (conduct adversely reflecting on fitness to practice law). *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Runge*, 588 N.W.2d 116, 118 (Iowa 1999). "The Iowa Rules of Professional Conduct became effective July 1, 2005, replacing the Iowa Code of Professional Responsibility for Lawyers." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 55 n.1 (Iowa 2009). Schall's failure to timely file his 2005 return violated rule 32:8.4(b) (criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness) and rule 32:8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation).

Schall's answer to the Board's complaint admitted alteration of the written arraignment and plea of not guilty form intending to effect an unauthorized waiver of Tesene's right to a speedy trial. Schall also admitted in his answer to the Board's complaint that he signed the form as an attorney falsely representing he had discussed the speedy trial matter with his client and as a notary falsely representing Tesene had signed the document in Schall's presence. These acts of Schall constitute violations of Iowa Rules of Professional Conduct 32:1.2(a) (failing to abide by a client's decisions concerning the objectives of representation and taking action on behalf of the client that was not authorized) and 32:8.4(c) (conduct involving dishonesty, fraud, deceit, or

misrepresentation). We have repeatedly held that an attorney's notarization of signatures of absent persons is "manifestly unprofessional." *Comm. on Prof'l Ethics & Conduct v. Bauerle*, 460 N.W.2d 452, 454 (Iowa 1990). An attorney who, in preparing documents for clients, makes false statements of fact as Schall did in the Tesene case, commits sanctionable misconduct. *Comm. on Prof'l Ethics & Conduct v O'Donohoe*, 426 N.W.2d 166, 169 (Iowa 1988). Schall's conduct caused unnecessary motions, court hearings, and rulings in Tesene's criminal case and constituted a violation of rule 32:8.4(d) (conduct prejudicial to the administration of justice).

## IV. Sanction.

In determining the appropriate sanction for violation of ethical rules, we consider a plethora of factors, including the nature of the violations, the goal of protecting the public from unethical conduct by attorneys, the deterrence of similar misconduct by others, the respondent's fitness to practice law, the court's duty to uphold the integrity of the profession in the eyes of the public, and the sanctions imposed for similar conduct in prior cases. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Iversen,* 723 N.W.2d 806, 812 (Iowa 2006). Our determination of the sanction is also affected by aggravating and mitigating circumstances. *Id.* at 810.

In *Knopf*, we surveyed the range of discipline imposed by this court in other cases against attorneys who failed to file tax returns. 793 N.W.2d at 531. We noted that we have "imposed a sanction of license suspension from sixty days to three years" for such misconduct. *Id.* The failure to file tax returns for an extended period has been deemed an aggravating factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields,* 790 N.W.2d 791, 799 (Iowa 2010).

In *Knopf*, the parties stipulated that the respondent failed to file returns for two years.[4]   793 N.W.2d at 529.  We suspended Knopf's license indefinitely with no possibility of reinstatement for three months. *Id.* at 532.  We find Schall's conduct in failing to file tax returns is similar to that of the respondent in *Knopf*.  Schall failed to timely file returns for six years, but the Board's complaint alleged, and therefore we have found, violations for only three years.  Similarly, in *Iowa Supreme Court Board of Professional Ethics & Conduct v. Neuwoehner,* we suspended the respondent's license indefinitely with no possibility of reinstatement for three months for failing to file state income tax returns for three consecutive years.  595 N.W.2d 797, 798 (Iowa 1999).

We conclude a suspension of more than three months is required in this case, however, because of Schall's ethical violations in his representation of Tesene.  In *Bauerle,* an attorney with no history of prior misconduct made false statements in documents prepared for his client and notarized a signature he had not witnessed.  460 N.W.2d at 453.  We suspended Bauerle's license to practice with no possibility of reinstatement for six months.  *Id.* at 454.  In determining the appropriate sanction, we consider as an aggravating circumstance the respondent's history of prior misconduct and professional discipline.  *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. McKittrick,* 683 N.W.2d 554, 563 (Iowa 2004).  The record reveals Schall was publicly reprimanded in 2001 for failing to deposit a fee in a trust account and was privately admonished on two other occasions.

---

[4]Although the parties stipulated that Knopf failed to file tax returns for two years, the Board's complaint alleged he had failed to file returns for eleven years. *Knopf*, 793 N.W.2d at 529.

Mitigating circumstances, while not excusing the disciplinary violations, may be considered in determining the severity of the appropriate sanction. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel*, 634 N.W.2d 652, 656–57 (Iowa 2001) (alcoholism); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 294–96 (Iowa 2002) (major depression). We consider as mitigating factors in this case that during the years when Schall failed to pay state taxes he was coping with his own serious health problems and acting as primary caretaker for his wife during her lengthy terminal illness. Other mitigating factors include Schall's cooperation with the Board's investigation, his eight years of service as a school board member, and his participation in many other significant local and state civic activities. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 442 (Iowa 2012).

Having considered all of the factors mentioned above, we conclude Schall's conduct warrants an indefinite suspension of his license without possibility of reinstatement for six months.

## V. Conclusion.

We suspend Schall's license to practice law in Iowa indefinitely with no possibility of reinstatement for six months. This suspension applies to all facets of the practice of law. *See* Iowa Court Rule 35.12(3). Prior to reinstatement, Schall shall establish that he has not practiced law during the period of suspension and that he has complied with all of the requirements of rule 35.13 and the notification provisions of rule 35.22. The costs of this action are taxed to Schall under rule 35.26.

**LICENSE SUSPENDED.**

All justices concur except Mansfield, J., who takes no part.