*Attorney Grievance Commission of Maryland v. Gerald Isadore Katz*, Miscellaneous Docket AG No. 6, September Term, 2014

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT:** Respondent, Gerald Isadore Katz, violated the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") as a result of his repeated, willful failure to pay federal income taxes and timely file federal income tax returns over the course of 15 years. During this period, Katz underpaid his federal income taxes by approximately $2.5 million. Katz's repeated, willful failure to pay his taxes and timely file his tax returns represents intentional dishonest conduct for personal gain. Katz's misconduct violated MLRPC 8.4(a), (b), (c), and (d) and warrants disbarment.

Circuit Court for Montgomery County
Case No.: 29834-M
Argued:  May 11, 2015

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 6

September Term, 2014

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

GERALD ISADORE KATZ

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by Adkins, J.

Filed:  June 23, 2015

On April 7, 2014, Petitioner, Attorney Grievance Commission ("AGC"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action against Respondent, Gerald Isadore Katz. Bar Counsel charged Katz with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 8.4(a), (b), (c), and (d),[1] stemming from his failure to timely file federal income tax returns and pay the appropriate amount of federal income taxes due in tax years 1996 through 2010.

As permitted by Maryland Rule 16-752(a), we referred the Petition to the Honorable Richard E. Jordan of the Circuit Court for Montgomery County to conduct an evidentiary hearing and make findings of fact and proposed conclusions of law. Following a two-day hearing conducted on September 2–3, 2014, Judge Jordan dictated into the record his findings of fact and proposed conclusions of law. On September 24, 2014, Judge Jordan issued an Order adopting the transcribed statement of his oral findings and proposed conclusions. Judge Jordan found by clear and convincing evidence that Katz violated MLRPC 8.4(a), (b), and (d).

---

[1] MLRPC 8.4(a)–(d) provide:
> It is professional misconduct for a lawyer to:
> (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
> (d) engage in conduct that is prejudicial to the administration of justice[.]

**THE HEARING JUDGE'S FINDINGS OF FACT**

Judge Jordan found the following facts by clear and convincing evidence. Katz was admitted to the Maryland Bar on June 2, 1983. Over the course of his 38-year legal career, Katz practiced law in Maryland, Virginia, and the District of Columbia. At the time of the hearing, Katz was a member in good standing of the bars of Virginia and the District of Columbia, but was indefinitely suspended from the practice of law in Maryland. This indefinite suspension was the result of Katz's failure to file Maryland state tax returns.[2]

In November 2012, Katz signed an Agreed Order in a civil tax action pending against him in the United States District Court for the District of Maryland. In this Order, Katz and the federal government consented to entry of a tax judgment against Katz in the amount of $5,462,935.25, which represented the amount of federal income tax owed between tax years 1996 and 2009, plus interest and penalties. Katz agreed to pay a lump sum of several hundred thousand dollars against the judgment, but as of the time of the hearing before Judge Jordan, Katz had made no such payment. Katz also agreed to make monthly payments in accordance with a payment plan, and he was complying with that aspect of the agreement.

Katz filed late tax returns for tax years 1996 through 2005 and 2007 through 2010, and "grossly underpaid" his income taxes for tax years 1996 through 2010. In the table

---

[2] In *Attorney Grievance Commission v. Katz*, 429 Md. 308, 55 A.3d 909 (2012), we indefinitely suspended Katz for failing to file his Maryland state income tax returns for tax years 2004 and 2005. In a criminal proceeding, Katz had pleaded guilty to two counts under Maryland Code (1988, 2010 Repl. Vol.), § 13–1001(d) of the Tax-General Article. *Id.* at 311, 55 A.3d at 910. In addition to other penalties, Katz was ordered to pay restitution exceeding $700,000. *Id.*

below, we summarize the hearing judge's findings regarding Katz's late filings and

underpayments:

| TAX YEAR | DATE TAX RETURNS FILED | AMOUNT OF INCOME (rounded to the lower thousand) | | TAX ASSESSMENT | | PAYMENTS MADE | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| 1996 | March 16, 2001 | $ | 788,000 | $ | 315,433 | $ | 123,000 |
| 1997 | March 16, 2001 | $ | 661,000 | $ | 263,239 | $ | 91,000 |
| 1998 | March 16, 2001 | $ | 390,000 | $ | 146,812 | $ | 1,200 |
| 1999 | March 16, 2001 | $ | 673,000 | $ | 269,819 | $ | 23,000 |
| 2000 | May 28, 2002 | $ | 478,000 | $ | 161,318 | $ | 41,000 |
| 2001 | October 1, 2003 | $ | 477,000 | $ | 166,711 | $ | 15,200 |
| 2002 | February 16, 2007 | $ | 319,000 | $ | 103,208 | $ | 80,000 |
| 2003 | February 16, 2007 | $ | 268,000 | $ | 82,525 | $ | 2,050 |
| 2004 | February 16, 2007 | $ | 592,000 | $ | 205,070 | $ | 1,800 |
| 2005 | February 16, 2007 | $ | 573,000 | $ | 184,299 | $ | 1,850 |
| 2006[3] | | $ | 758,000 | $ | 267,014 | $ | 145,648 |
| 2007 | May 9, 2008 | $ | 768,054 | $ | 236,528 | $ | - |
| 2008 | June 4, 2010 | $ | 565,000 | $ | 186,840 | $ | 61,368 |
| 2009 | December 21, 2010[4] | $ | 736,000 | $ | 248,424 | $ | 29,106 |
| 2010 | September 26, 2011 | $ | 874,000 | $ | 284,539 | $ | 1,800 |
| | | | | | | | |
| **Totals:** | | **$** | **8,920,054** | **$** | **3,121,779** | **$** | **618,022** |

Although the hearing judge did not explicitly state this figure on the record, simple

subtraction shows that Katz underpaid his federal income taxes by $2,503,757. The table

---

[3] The hearing judge did not make a finding as to when Katz filed his return for tax year 2006.

[4] Although the hearing judge found the date to be December 21, 2010, Katz's testimony and an IRS transcript reveal that the actual date of return was December 23, 2010.

also reflects that he filed his returns from one to five years late. Notwithstanding his failure to timely file his returns and pay his taxes, Katz was "forthrightly aware of his obligation to file taxes in a timely manner and to pay what was due in taxes." Moreover, Katz's tax "shortcomings" continued even after he began addressing his deficiencies with the Internal Revenue Service ("IRS"). While Katz was negotiating with the IRS, he owed $284,539 in income taxes for tax year 2010, but "astoundingly"[5] only paid a meager $1,800.

Regarding the criminal nature of Katz's conduct, the hearing judge found that Katz "unquestionably" violated 26 U.S.C. § 7203 (2012) by **willfully** failing to pay his taxes and timely file his tax returns[6]:

> And the court finds by—unquestionably finds that [Katz] did willfully fail to file on time and, more significantly perhaps,

---

[5] "Astoundingly" is the word used by the hearing judge.

[6] 26 U.S.C. § 7203 (2012) criminalizes the willful failure to file income tax returns or pay personal income taxes:

> Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year, or both, together with the costs of prosecution. In the case of any person with respect to whom there is a failure to pay any estimated tax, this section shall not apply to such person with respect to such failure if there is no addition to tax under section 6654 or 6655 with respect to such failure. In the case of a willful violation of any provision of section 6050I, the first sentence of this section shall be applied by substituting "felony" for "misdemeanor" and "5 years" for "1 year".

4

did willfully fail to pay estimated tax on time as required by law and, by not only clear and convincing evidence but by a standard of proof beyond a reasonable doubt, finds that [Katz] did commit a criminal act or acts [from 1996 to 2010], despite the fact that he was not charged by the federal government.

## THE HEARING JUDGE'S CONCLUSIONS OF LAW

The hearing judge concluded that Katz's misconduct violated MLRPC 8.4(b) because he committed criminal acts under 26 U.S.C. § 7203, and these criminal acts reflected adversely on his trustworthiness and fitness as a lawyer:

> The court . . . find[s] that [Katz's violation of 26 U.S.C. § 7203] reflect[s] adversely on his trustworthiness and his fitness as a lawyer in other respects in that the failure repeated and in such extreme, given the amount of income and the deficiencies of payments . . . that does reflect on . . . Katz because a lawyer has to be trusted. Somebody that does not take care of one of the most basic duties as a citizen, particularly as a lawyer, to pay income taxes on time and in reasonable amounts on estimates is somebody who cannot be fully trusted as a lawyer.

The hearing judge also concluded Katz's misconduct violated MLRPC 8.4(d) because it was prejudicial to the administration of justice:

> The court does find by clear and convincing evidence that [Katz's] conduct was prejudicial to the administration of justice in that an attorney is, if anything, held to an even higher standard than a layperson in being the face of the law, of being a person to be trusted and see that the law is honored. The conduct here does show a disregard for the law, the government, and for one's own responsibility.

Because Katz violated MLRPC 8.4(b) and (d), Judge Jordan also concluded that Katz violated MLRPC 8.4(a):

> With respect to 8.4(a), it appears to the court that once you violate one of the rules of professional conduct, then you, therefore, violate (a), so the court will find a violation of 8.4(a).

5

The hearing judge did not conclude, however, that Katz violated MLRPC 8.4(c) because he did not find by clear and convincing evidence that there was dishonest conduct:

> [T]he court has significant concerns that [Katz's conduct reflects] a strategy over the years to minimize tax exposure, but the evidence is lacking to enable the court to find by clear and convincing evidence that dishonesty, fraud, deceit, or misrepresentation was the level to which . . . delaying tactics or even gaming the system rose to the level of misconduct under 8.4(c).

Judge Jordan also found that Katz's law firm filed "accurate" IRS Schedule K-1's[7] to report Katz's share of his law partnership's income and explained that this conduct militated against a finding that Katz engaged in dishonest conduct.

Judge Jordan concluded that Katz's lack of prior discipline over his lengthy legal career and his acceptance of responsibility were mitigating factors weighing in his favor:

> [I]t is in . . . Katz's favor that he has been an attorney for 38 years, that he's been successful, that he's not had charges before. It's in his favor that he's forthrightly accepted responsibility for his shortcomings. He hasn't come in and tried to tell the court that he was . . . under stress, using alcohol, had family problems. And that is a substantially beneficial fact for . . . Katz.
>
> . . . And while the Court's flabbergasted at the extreme underpayment and repeated conduct here, it is to . . . Katz's credit that he's practiced for 38 years otherwise without blemish.

---

[7] A partnership uses the IRS Schedule K-1 to report a partner's share of the partnership's income, deductions, credits, and other tax-related items. *Partner's Instructions for Schedule K-1 (Form 1065) (2014)*, http://www.irs.gov/instructions/i1065sk1/ch01.html (last visited June 9, 2015).

## DISCUSSION

### Standard Of Review

Our standard of review in attorney discipline matters is well-settled:

> In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record. We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous.
>
> Pursuant to Maryland Rule 16-759(b)(1), we review the hearing judge's proposed conclusions of law without deference. Thus, the ultimate determination . . . as to an attorney's alleged misconduct is reserved for this Court. In that regard, we examine the record to ascertain whether there was sufficient evidence to support the hearing judge's legal conclusions, by a clear and convincing standard of proof.

*Att'y Grievance Comm'n v. Cocco*, 442 Md. 1, 8, 109 A.3d 1176, 1180 (2015) (ellipses in original) (internal citations and quotation marks omitted).

### Exceptions And Conclusions Of Law

In attorney discipline proceedings, parties are permitted to file "(1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition." Md. Rule 16-758(b). Bar Counsel filed exceptions to the hearing judge's findings of fact and proposed conclusions of law. Specifically, Bar Counsel excepts to several figures within the hearing judge's recitation of the amount of taxes Katz owed and paid for tax years 1996 through 2010.[8] Bar Counsel also excepts to the hearing

---

[8] Bar Counsel's only exception to the hearing judge's findings of fact relates to his recitation of Katz's tax obligations and late payments. Sustaining this exception would result in a $45,418.88 difference in taxes paid and a $7,014.00 difference in taxes owed. In his recitation, the hearing judge drew most of his findings of fact related to Katz's estimated payments and taxes due from his federal tax returns, one of two types of

judge's conclusion that Katz did not violate MLRPC 8.4(c). For his part, Katz did not except to the hearing judge's findings of fact, but he did except to the hearing judge's conclusions of law, arguing his conduct did not violate MLRPC 8.4(a), (b), and (d).

### Whether Katz Violated MLRPC 8.4(c)

Katz relies on *Attorney Grievance Commission v. Worthy*, 436 Md. 633, 84 A.3d 113 (2014), to argue the hearing judge was correct in not finding a violation of 8.4(c). In that case, this Court concluded that an attorney who willfully failed to timely file his federal tax returns did not violate 8.4(c). *See id.* at 641–43, 84 A.3d at 118–19. *Worthy*, however, is readily distinguishable from this case.

In *Worthy*, the attorney failed to timely file his federal returns for only two years: 2006 and 2007. *Id.* at 639, 84 A.3d at 117. Moreover, the hearing court found that "during the period of time when those returns were due, Mr. Worthy had lost some of his financial records and had to order additional bank records. Those records were insufficient to adequately prepare the returns." *Id.* In this case, Katz failed to timely file his returns for 14 years, and there is no evidence that his repeated failure to file his returns resulted from his loss of financial records. Due to these marked differences in facts, *Worthy* provides no help for Katz.

---

documents admitted into evidence. In so doing, Judge Jordan stated: "the documents . . . admitted into evidence as exhibits will certainly control." There is some discrepancy between these forms and the other documents admitted, IRS account transcripts as to Katz. Furthermore, Judge Jordan erred in finding Katz's 2006 estimated payments to be $145,648.00. Based upon his return, his actual payments for that year totaled $145,678.00 (an error of $30.00). Because these differences are immaterial to our conclusions of law and sanction, as will be evident *infra*, we need not address Bar Counsel's factual exception.

8

To support its argument that Katz violated MLRPC 8.4(c), Bar Counsel relies on *Attorney Grievance Commission v. Atkinson*, 357 Md. 646, 745 A.2d 1086 (2000). We agree that *Atkinson* is instructive because it also dealt with an attorney's willful failure to file income tax returns and pay income taxes over a protracted period of time.

In *Atkinson*, Bar Counsel charged attorney Rena Vaughn Atkinson with several violations of the MLRPC arising out of her failure to file and pay federal and state income taxes for tax years 1986 through 1996. *Id.* at 647, 745 A.2d at 1087. The Circuit Court for Prince George's County found that Atkinson *willfully* failed to file or pay federal and state income taxes over this 11-year period. *Id.* at 650, 745 A.2d at 1088. After Bar Counsel initiated disciplinary proceedings against Atkinson, she filed returns for every year starting in 1986, except for 1988. *Id.* at 649, 745 A.2d at 1088. Although Atkinson remedied, for the most part, her failure to file returns, she still owed $93,000 in back taxes and penalties and made only one payment of $15,546.61 toward that balance. *Id.*

This Court agreed with the hearing judge's conclusion that Atkinson's misconduct violated MLRPC 8.4(c). *Id.* at 656, 745 A.2d at 1091. This Court determined the hearing judge was "correct in characterizing [Atkinson's] particular misconduct as dishonest, if only because of the *substantial duration* in time over which she failed to pay *both* state and federal income taxes." *Id.* at 655, 745 A.2d at 1091 (first emphasis added). The Court continued that "[t]he repeated failure to file tax returns—particularly when it spans an uninterrupted period of over ten years—is not a minor criminal offense, is a *dishonest* act, and reflects adversely on a lawyer's honesty, trustworthiness and fitness to practice law." *Id.* (emphasis added). Additionally, the Court clarified that "[a] conviction for tax evasion

9

is not a necessary predicate to support a finding of dishonesty." *Id.* at 655–56, 745 A.2d at 1091.

Here, Katz also repeatedly failed to file tax returns. He grossly underpaid his federal income taxes for 15 years and failed to timely file his returns for 14 of those years. If Atkinson's 11-year period of misconduct qualifies as a "substantial duration" of time, then so, too, does Katz's 15-year period. *Id.* Although Katz was not convicted of tax evasion for these years, such a conviction is not required for us to conclude that Katz violated MLRPC 8.4(c). *Id.* The factual conclusion of the hearing judge, who declined to find dishonest intent, is overridden by the holding in *Atkinson* that "[t]he repeated failure to file tax returns . . . is a dishonest act" as a matter of law. *Id.* at 655, 745 A.2d at 1091.

Katz's attempts to distinguish *Atkinson* are unavailing. First, Katz argues that Atkinson never filed her tax returns, whereas Katz did file his tax returns, "albeit late." Atkinson did in fact file her returns, although much belatedly, and at the request of an IRS agent. *See Atkinson*, 357 Md. at 649, 745 A.2d at 1088 ("[Atkinson] has since filed [a] return for each year from 1986 through to the present, except for 1988." (second alteration in original)). We are not persuaded that the difference between Katz's filing from one to five years late for a period of 14 years and Atkinson's misconduct works in Katz's favor in any meaningful way.

Second, Katz argues that Atkinson never engaged with the IRS to establish a payment plan to rectify her tax deficiencies. Here, although the hearing judge found that Katz engaged with the IRS, Katz's tax deficiencies "continued even after he was addressing

10

with the IRS his tax problems." The hearing judge specified "[t]hat is not a factor that weighs in [Katz's] favor."

*Atkinson* is not the only case in which we have concluded an attorney violated MLRPC 8.4(c) after having willfully failed to file tax returns and pay taxes over a period of multiple years. In *Attorney Grievance Commission v. Worsham*, attorney Michael Craig Worsham failed to file federal and state income tax returns and pay income taxes for tax years 2005 through 2012. 441 Md. 105, 110–12, 105 A.3d 515, 518–19 (2014). The hearing judge found that Worsham carried out this misconduct "willfully, knowingly, and purposefully." *Id.* at 117, 105 A.3d at 522. Relying on *Atkinson*, we concluded Worsham's misconduct violated MLRPC 8.4(c). *Id.* at 129, 105 A.3d at 529. In reaching this conclusion, we recited the rule from *Atkinson* that "the repeated failure to file income tax returns is 'a *dishonest* act.'" *Id.* (emphasis added) (citation omitted).

In *Attorney Grievance Commission v. Tayback*, attorney Matthew G. Tayback willfully failed to timely file his federal and state income tax returns for tax years 1987 through 1989 and 1990 through 1993, resulting in $118,000 in unpaid federal income taxes. 378 Md. 578, 583, 837 A.2d 158, 161 (2003). The hearing judge found that, due to a lack of dishonest intent, Tayback's misconduct did not violate MLRPC 8.4(c), and Bar Counsel took exception to that finding. *Id.* at 590–91, 837 A.2d at 165–66. We sustained Bar Counsel's exception, relying on the rule from *Atkinson*. Thus, we concluded that Tayback's misconduct violated MLRPC 8.4(c). *Id.* at 591–92, 837 A.2d at 166.

In sum, based on *Atkinson*, *Worsham*, and *Tayback*, we conclude that Katz's repeated, willful failure to pay his federal income taxes and timely file his federal income

11

tax returns represents dishonest conduct that violated MLRPC 8.4(c). Accordingly, we sustain Bar Counsel's exception.

### *Whether Katz Violated MLRPC 8.4(b)*

To establish a violation of MLRPC 8.4(b), Bar Counsel must prove two elements by clear and convincing evidence: (1) Katz committed a criminal act; and (2) that criminal act reflects adversely on his honesty, trustworthiness or fitness as a lawyer in other respects. *Att'y Grievance Comm'n v. O'Toole*, 379 Md. 595, 610, 843 A.2d 50, 59 (2004); MLRPC 8.4(b). Katz argues Bar Counsel did not prove either of these elements. We are not persuaded.

Katz highlights that he was never charged criminally under 26 U.S.C. § 7203, contending his lack of criminal conviction precludes a violation of 8.4(b). We have consistently held that "so long as there is clear and convincing evidence of facts constituting a criminal offense, there need not be a criminal conviction in order to find that an attorney violated MLRPC 8.4(b)." *Worsham*, 441 Md. at 129, 105 A.3d at 529. Here, Judge Jordan found by clear and convincing evidence that Katz willfully failed to pay his federal income taxes or timely file his federal income tax returns. Based on our independent review of the record, this finding was not clearly erroneous, and we will not disturb it. *See Attorney Grievance Comm'n v. Ugwuonye*, 405 Md. 351, 368, 52 A.2d 226, 236 (2008) ("Factual findings by the hearing judge will not be interfered with if they are founded on clear and convincing evidence." (citation omitted)). The willful failure to file federal income tax returns or to pay federal income taxes is a criminal act under 26 U.S.C. § 7203. *Worsham*, 441 Md. at 129, 105 A.3d at 529.

12

Katz relies on *Attorney Grievance Commission v. Post*, 350 Md. 85, 710 A.2d 935 (1998) and *Atkinson*, *supra*, to argue that his misconduct does not reflect adversely on his trustworthiness and fitness as a lawyer. In *Post*, attorney Alan Franklyn Post failed, for a period of four years, to timely file withholding income tax returns, to remit the taxes withheld from his employees' wages, and to hold the withheld taxes in trust. *Post*, 350 Md. at 87–88, 710 A.2d at 936. Post arranged a payment plan with the Maryland Comptroller to rectify the deficiencies, but his payments against the plan were consistently late. *Id.* at 89–90, 710 A.2d at 937. In some instances, Post failed to make any payments at all. *Id.* Although Post and Bar Counsel stipulated that Post "did not intend to defraud the Comptroller or to deprive the Comptroller permanently of the funds," Post acknowledged, and the hearing judge found, "that the withheld funds were not placed in his payroll account on multiple occasions due to his cash flow problems and that he used the funds withheld from his employees' wages to pay business expenses of the law firm." *Id.* at 91, 710 A.2d at 937–38.

The hearing judge concluded that Post's misconduct violated MLRPC 8.4(b) and (d), and Post excepted with respect to MLRPC 8.4(b). *Id.* at 92, 94, 710 A.2d at 938, 939. This Court agreed with Post and sustained his exception, concluding that although Post's misconduct was prejudicial to the administration of justice, it did not "reflect[] adversely on his fitness as a lawyer." *Id.* at 99, 710 A.2d at 942. We explained that the only basis for the hearing judge's conclusion that Post's misconduct did "reflect adversely on his fitness as a lawyer is that failure to practice what one preaches undermines one's credibility as a provider of legal counsel. But that is simply another way of saying that the

13

administration of justice may be prejudiced." *Id.* We also highlighted that the hearing judge "diagnosed the problem as one involving [Post's] office management skills rather than 'his performance or abilities as an attorney.'" *Id.*

We see several material differences between *Post* and this case. The sheer difference in the amount of taxes owed by Katz, as compared to Post is material. With income in amounts ranging from $268,000[9] to $874,000, Katz had available to him large amounts of discretionary income which he chose not to use for his tax obligations. In comparison, *Post,* who owed less than $20,000 in withholding taxes, used the tax money he should have paid to the government to cover business expenses in order to keep his law firm afloat. *Id.* at 89, 91, 710 A.2d at 937, 938. There is no indication that Katz used the money for anything other than personal, excessive expenditures. Finally, four years of late payments is markedly less than 14 years.

In *Attorney Grievance Commission v. Walman*, 280 Md. 453, 374 A.2d 354 (1977), we concluded that the attorney's misconduct reflected adversely on his fitness to practice law when he failed to pay personal income taxes. Joseph Walman was indicted by a federal grand jury with "willfully and knowingly" failing to file his federal income tax return for tax years 1967, 1968, and 1969. *Id.* at 454, 374 A.2d at 355. Walman pled guilty to willfully and knowingly failing to file his 1968 return. *Id.* at 454, 374 A.2d at 355–56. He used the tax money he did not pay to the government to provide financial assistance to his grandfather and to pay his nephew's college tuition. *Id.* at 456, 374 A.2d at 356–57. This

---

[9] This "low" figure was an outlier. Katz's next lowest income during the period was $319,000, and in the majority of the years, he earned over $500,000.

14

Court concluded it was "beyond debate" that Walman's misconduct reflected adversely on his fitness to practice law. *Id.* at 463, 374 A.2d at 360.

Additionally, we find guidance in Comment 2 to MLRPC 8.4, which states that "[m]any kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of *willful failure to file an income tax return*." (Emphasis added.) The hearing judge found that there was clear and convincing evidence that Katz willfully failed to file his federal income tax returns for tax years 1996 through 2005 and 2007 through 2010.

In *Attorney Grievance Commission v. Baldwin*, 308 Md. 397, 407, 519 A.2d 1291, 1296 (1987), we endorsed a two-part inquiry for determining whether an attorney's misconduct reflects adversely on his fitness to practice law: "(1) Does the misconduct reveal some flaw in the attorney's personality that if manifested in his professional activity would cause him to violate his obligations to his clients, the courts, or fellow attorneys? (2) Is it likely that the deleterious personality trait will be carried over into the attorney's professional life?" In this case, we answer both of these questions in the affirmative. Practicing law in an effective manner regularly requires meeting strict deadlines and responsibly managing client funds in trust accounts. Katz's underpayment of his taxes by approximately $2.5 million and his repeated failure to meet filing deadlines for 14 years exhibits egregious financial irresponsibility and a complete disregard for critical government-imposed deadlines. His financial irresponsibility and indifference to his legal obligations as a citizen of his country and state could cause him to violate his obligations to his clients, the courts, and his fellow attorneys. Furthermore, although Katz does not

15

have a disciplinary record, other than his earlier suspension for failing to file his state income tax returns, his misconduct was repeated each year for 14 years—certainly an aggravating factor.

In sum, we conclude that Katz's misconduct violated MLRPC 8.4(b) because he willfully failed to file his federal income tax returns and pay his federal income taxes in violation of 26 U.S.C. § 7203 for 14 years, and this misconduct reflects adversely on his fitness to practice law.  Accordingly, we overrule Katz's exception.

### Whether Katz Violated MLRPC 8.4(a) And (d)

Katz also takes exception to the hearing judge's proposed conclusions that he violated MLRPC 8.4(a) and (d).  "[I]t is well-settled that a lawyer's willful failure to file his or her personal income tax returns violates the prohibition of [MLRPC] 8.4(d) of engaging in conduct prejudicial to the administration of justice." *Att'y Grievance Comm'n v. Hoang*, 433 Md. 600, 610, 72 A.3d 548, 554 (2013) (citation omitted).  Moreover, "[e]ven though it does not directly injure a client, the willful failure to file returns or pay taxes is . . . prejudicial to the administration of justice because it cheats and defrauds the government." *Worsham*, 441 Md. at 130, 105 A.3d at 530 (citation and internal quotation marks omitted).  Because Katz willfully failed to timely file his federal income tax returns for tax years 1996 through 2005 and 2007 through 2010 and he underpaid his federal income taxes by approximately $2.5 million for tax years 1996 through 2010, we conclude Katz violated MLRPC 8.4(d) and overrule his exception.

It goes without saying that because Katz violated MLRPC 8.4(b), (c), and (d), he also violated MLRPC 8.4(a), which states, in part, that it is professional misconduct for an

16

attorney to violate the MLRPC. *See Att'y Grievance Comm'n v. Brigerman*, 441 Md. 23, 41, 105 A.3d 467, 477 (2014) ("Based on [Brigerman's] numerous other violations of the MLRPC, [Brigerman] also violated MLRPC 8.4(a)."). Thus, we overrule Katz's exception.

**Sanction For Violation Of MLRPC 8.4(a), (b), (c), And (d)**

Bar Counsel contends that Katz should be disbarred. Katz argues that he should be "suspended for a short period of time, not more than for two and a half years *nunc pro tunc* to November 2012."

When fashioning a sanction, we are mindful that "[t]he purpose of discipline under the [MLRPC] is not to punish the lawyer, but to protect the public and the public's confidence in the legal profession." *Att'y Grievance Comm'n v. Gore*, 380 Md. 455, 471, 845 A.2d 1204, 1213 (2004) (citation omitted). Our sanctions protect the public by deterring "the type of conduct which will not be tolerated, and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State." *Id.* at 471–72, 845 A.2d at 1213 (citations and internal quotation marks omitted). Furthermore, as we explained in *Walman*, preserving the public's confidence in the legal profession is particularly pertinent in cases involving the willful failure to file tax returns:

> An attorney's willful failure to file income tax returns may seriously impair public confidence in the entire profession. The need, therefore, to maintain public respect for the bar is a vital consideration in the imposition of disciplinary sanctions. The lawyer, after all, is intimately associated with administration of the law and should rightfully be expected to set an example in observing the law. By willfully failing to file his tax returns, a lawyer appears to the public to be placing himself above that law.

280 Md. at 464–65, 374 A.2d at 361.

17

The appropriate severity of the sanction we impose depends upon the facts and circumstances of each particular case. *Atkinson*, 357 Md. at 656, 745 A.2d at 1092 (citation omitted). When evaluating these facts and circumstances, we consider "the attorney's prior grievance history, as well [as] any mitigating factors."[10] *Id.* We may also consider

---

[10] Mitigating factors include:
>  (a)  absence of a prior disciplinary record;
>  (b)  absence of a dishonest or selfish motive;
>  (c)  personal or emotional problems;
>  (d)  timely good faith efforts to make restitution or to rectify consequences of misconduct;
>  (e)  full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
>  (f)  inexperience in the practice of law;
>  (g)  character or reputation;
>  (h)  physical disability;
>  (i)  mental disability or chemical dependency including alcoholism or drug abuse when:
>>  (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
>>  (2) the chemical dependency or mental disability caused the misconduct;
>>  (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
>>  (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely;
>  (j)  delay in disciplinary proceedings;
>  (k)  imposition of other penalties or sanctions;
>  (l)  remorse;
>  (m)  remoteness of prior offenses.

American Bar Association, *Standards for Imposing Lawyer Sanctions*, § 9.32 (1992), *reprinted in Compendium of Professional Responsibility Rules and Standards* (2014).

aggravating factors.[11] *See Worsham*, 441 Md. at 135–36, 105 A.3d at 533 (considering aggravating factors in failure-to-file case).

We begin with the severity of Katz's misconduct. Katz failed to timely file his income tax returns for 14 years, and he underpaid his taxes for 15 years to the tune of approximately $2.5 million. This misconduct is far more egregious than that of other attorneys we have suspended for failure to file and pay their incomes taxes. *See, e.g.*, *Worthy*, 436 Md. 633, 84 A.3d 113 (indefinite suspension with right to reapply after six months for attorney who failed to timely file his federal returns for tax years 2006 and 2007, resulting in at least $70,000 in unpaid taxes); *O'Toole,* 379 Md. 595, 843 A.2d 50 (30-day suspension for attorney who willfully failed to file federal and state income tax returns for three years, with an attendant arrearage of $7,354.98); *Tayback*, 378 Md. 578, 837 A.2d 158 (indefinite suspension with the right to reapply after 60 days for attorney

---

[11] Aggravating factors include:
    (a)   prior disciplinary offenses;
    (b)   dishonest or selfish motive;
    (c)   a pattern of misconduct;
    (d)   multiple offenses;
    (e)   bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
    (f)   submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
    (g)   refusal to acknowledge wrongful nature of conduct;
    (h)   vulnerability of victim;
    (i)   substantial experience in the practice of law;
    (j)   indifference to making restitution;
    (k)   illegal conduct, including that involving the use of controlled substances.
American Bar Association, *Standards for Imposing Lawyer Sanctions*, § 9.22 (1992), *reprinted in Compendium of Professional Responsibility Rules and Standards* (2014).

who failed to file returns and pay taxes for seven years, resulting in $118,000 in unpaid taxes); *Atkinson*, 357 Md. 646, 745 A.2d 1086 (indefinite suspension with the right to reapply after one year for attorney who failed to file and pay federal and state income taxes for 11 consecutive years, resulting in $93,000 in unpaid taxes); *Att'y Grievance Comm'n v. Breschi,* 340 Md. 590, 667 A.2d 659 (1995) (six-month suspension for attorney who willfully failed to file federal and state income tax returns for tax years 1989 and 1990); *Walman*, 280 Md. 453, 374 A.2d 354 (three-year suspension for attorney who pled guilty to failing to file income tax return for tax year 1968 and underpaid taxes by $4,799 plus interest and penalties).

In cases involving failure to file income tax returns, a critical consideration in fashioning a sanction is the "intention and motive of the attorney." *Atkinson*, 357 Md. at 656, 745 A.2d at 1092 (citation omitted). Generally, suspension is the appropriate sanction when the willful failure to file is not the result of fraudulent or dishonest intent. *Worsham*, 441 Md. at 132, 105 A.3d at 531 (collecting cases). Disbarment is appropriate when the failure to file "was the result of intentional dishonest conduct for personal gain." *Id.* at 132–33, 105 A.3d at 531. When an attorney engages in intentional dishonest conduct motivated by the desire for personal gain, disbarment is warranted "regardless of whether the conduct is criminal or resulted in a criminal conviction." *Id.* at 134, 105 A.3d at 532 (citation omitted).

Katz's repeated, willful failure to pay his taxes and timely file his tax returns represents intentional dishonest conduct for personal gain. "In attorney grievance matters based on the willful failure to file tax returns, this Court has consistently defined *willfulness*

20

as the voluntary, *intentional* violation of a known legal duty . . . ." *Tayback*, 378 Md. at 589, 837 A.2d at 165 (emphasis added) (citation and internal quotation marks omitted). And, as we explained *supra*, "[t]he repeated failure to file tax returns . . . is a *dishonest* act" as a matter of law. *Atkinson*, 357 Md. at 655, 745 A.2d at 1091 (emphasis added).

We have consistently emphasized the unparalleled importance of honesty in the practice of law:

> Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.

*Att'y Grievance Comm'n v. Angst*, 369 Md. 404, 420, 800 A.2d 747, 757 (2002) (citation omitted). "[A]bsen[t] compelling extenuating circumstances justifying a lesser sanction, intentional dishonest conduct by a lawyer will result in disbarment." *Att'y Grievance Comm'n v. Garcia*, 410 Md. 507, 525, 979 A.2d 146, 157 (2009) (second alteration in original) (citation and internal quotation marks omitted).

In this case, there are no mitigating factors to justify a sanction less severe than disbarment. As mitigation, Katz points to several factors. First, he highlights that he cooperated with the IRS to negotiate a payment plan to discharge his multimillion dollar tax deficiency. But although "we have said that an offending attorney's after-the-fact cooperation with authorities is commendable, nonetheless we have consistently refused to treat such cooperation as a mitigation of the underlying conduct." *Atkinson*, 357 Md. at 658, 745 A.2d at 1092.

21

Second, Katz argues that his misconduct did not injure or negatively impact any clients or courts. He emphasizes that he did not steal a client's money or display a lack of candor with a court. As we have stated, however, "[w]e see no significant moral distinction between willfully defrauding and cheating for personal gain a client, an individual, or the government." *Gore*, 380 Md. at 472, 845 A.2d at 1213 (citation and internal quotation marks omitted). Katz willfully cheated the federal government out of approximately $2.5 million. His attorney said at oral argument that he did not currently have the means to pay and would not ever have, if we disbarred him.[12] This misconduct is equally as reprehensible as cheating a client.

Third, Katz points to his acceptance of responsibility and his lack of prior disciplinary offenses. Regarding his lack of a disciplinary record, Katz states that "[o]ther than these regrettable Maryland and federal tax issues, which are essentially one singular set of circumstances from the same time period, [his] record is spotless." Katz's acceptance of responsibility and lack of prior disciplinary offenses outside his Maryland and federal tax offenses are outweighed by the aggravating factor of Katz's pattern of misconduct. Katz's transgressions are not limited to a few isolated occurrences—he willfully failed to file his tax returns for 14 years and he drastically underpaid his taxes for 15 consecutive years. That he has verbally accepted responsibility for his transgressions and, other than the 2012 suspension, has not received any other discipline from this Court are not sufficient

---

[12] His exact words were: "[H]e has no money. He'll never pay back what he owes if he isn't practicing."

22

to compensate for his cheating the government out of approximately $2.5 million over the course of a decade-and-a-half.

In light of the severity of Katz's intentional dishonest conduct, and finding no mitigating factors, we concluded that disbarment is the appropriate sanction. Accordingly, we entered the May 11, 2015 order disbarring Katz and awarding costs against him.

> **RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761. JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST GERALD ISADORE KATZ IN THE SUM OF THESE COSTS.**