WATERMAN, Justice
(dissenting).
I respectfully dissent because the majority’s six-month suspension is too lenient in light of our precedent. Attorney Taylor willfully failed to pay any self-employment taxes or income taxes or file her state and federal tax returns for eleven years. The majority acknowledges without elaboration that “Taylor had a substantial income over this time period that would have allowed her to pay her taxes.” Her actual income, of course, is relevant' to the sanction.' This is not a case where the lawyer failed to realize her income was high ' enough to require a tax return, or where the lawyer was incapacitated or financially, unable to *384 pay. In fact, Taylor’s net business income averaged $138,000 annually. She knowingly failed to pay tens of thousands of dollars owed to our state and federal governments every one of those years. She candidly admitted in 2015 that she “managed to increase [her] disposable income hy thirty or forty percent each year by not paying income tax.” Specifically, her tax accountant belatedly determined that during the years 2003 through 2013, she owed state taxes totaling $83,048 and federal taxes totaling $385,025, for a combined total of $468,073 exclusive of interest and penalties.
It is undisputed that Taylor knew throughout that eleven-year period that she was legally required to file tax returns and pay income and self-employment taxes annually, but she failed to do so. She had the ability to pay but chose not to pay anything. She blamed her spouse for their financial, troubles late in their marriage, yet her failure to file tax returns or pay income taxes continued another three years after the Iowa district court in the dissolution-of-marriage decree ordered her to file her own separate tax returns.
“We have repeatedly held that ‘[i]t is as wrong for a lawyer to cheat the government as it- is for him to cheat a client.’ ” Iowa Supreme Ct. Att’y Disciplinary Bd. v. Fields, 790 N.W.2d 791, 799 (Iowa 2010) (quoting Iowa Supreme Ct. Att’y Disciplinary Bd. v. Iversen, 723 N.W.2d 806, 810 (Iowa 2006)). That admonition is oddly missing from today’s majority opinion. We would not hesitate to revoke the license of a lawyer who stole from a client. Taylor, in effect, stole from all Iowans for many years. And she did not self-report or come clean voluntarily; her disciplinary charges and negotiations with the tax authorities were triggered by a complaint from her ex-husband’s new girlfriend.[5] Taylor’s “misconduct cannot be mitigated by a finding of voluntary disclosure.” Fields, 790 N.W.2d at 799.
The Board requests an eighteen-month suspension. Our precedent supports a suspension of at least a year. We suspended Fields for eighteen months based on his failure to file tax returns for ten years and other violations. Id. at 799-801. We suspended Iversen for one year, noting that his failure to file state or federal tax returns for nearly a decade showed a “pattern of conduct justifying an increased sanction.” Iversen, 723 N.W.2d at 810-11. Iversen was not charged with any other ethics violations, had no prior disciplinary record, fully cooperated with the attorney disciplinary board, and made no “attempt to shift the blame for his actions elsewhere.” Id. at 811. Last year, in Iowa Supreme Court Attorney Disciplinary Board v. Cross, we imposed a one-year suspension for trust account violations and failing to file tax returns or employment tax declarations for three years. 861 N.W.2d 211, 229 (Iowa 2015) (noting these tax “violations reflect adversely on Cross’s fitness to practice law”).
The majority overstates the significance of the 2003 revision to the annual client security questionnaire that deleted the requirement for lawyers to certify they filed tax returns. The purpose of that change was not to make it easier for tax cheats to evade detection. It is true a false certification is an independent ethics violation. Thus we have imposed eighteen-month suspensions in cases involving both a false certification and the failure to file tax returns for four or more years. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Doughty, 588 N.W.2d 119, 120 *385 (Iowa 1999); Comm. on Prof'l Ethics & Conduct of Iowa State Bar Ass’n v. Holmes, 271 N.W.2d 702, 704 (Iowa 1978) (imposing eighteen-month suspension for false certification and failure to file state tax returns for five years and stating “the period of suspension otherwise appropriate is increased in this case because of respondent’s false questionnaire responses, which in themselves would warrant disciplinary proceedings ..., and whieh we regard as an aggravating factor to be considered”). Iversen made no false certification and truthfully reported his failure to file tax returns, yet we still imposed a one-year suspension. 723 N.W,2d at 811. Unlike Iversen who had a previously unblemished disciplinary record, Taylor has two prior public reprimands. And unlike Iversen who self-reported, Taylor was turned in by a third party. Most importantly, Taylor, for three years, ignored a court order to file her tax returns and pay her back taxes, while Iversen violated no court order. Why is Taylor’s suspension six months shorter than Iversen’s?
The majority primarily relies on three cases to support its six-month suspension for Taylor: Iowa Supreme Court Attorney Disciplinary Board v. Knopf, 793 N.W.2d 525 (Iowa 2011), Iowa Supreme Court Attorney Disciplinary Board v. Schall, 814 N.W.2d 210 (Iowa 2012), and Cross, 861 N.W.2d at 211. Knopf and Schall are readily distinguishable, and Cross supports a one-year suspension. In Knopf, we imposed a three-month suspension when the lawyer neglected one appeal and failed to file his tax returns for only two years. 793 N.W.2d at 531-32. We noted in mitigation “health problems surrounding Knopf and his family ... affected his ability to cope.” Id. at 531 (noting also he cooperated with the Board, had no prior ethics complaints, and was winding down his law practice). Similarly, in Schall, we imposed a six-month suspension for a lawyer who failed to file his tax returns for three years, along with several other violations, while noting in mitigation that he “was coping with his own serious health problems and acting as primary caretaker for his wife during her lengthy terminal illness.” 814 N.W.2d at 215. Taylor claims no such health problems in mitigation. I see a significant difference between two- or three-year failures to file tax returns due to health problems and Taylor’s eleven-year failure without that excuse.
I disagree with the majority’s assertion that “Taylor’s conduct is not as egregious as the conduct in Cross.” Cross violated several of our rules governing trust accounts and misrepresented his compliance with trust account requirements on his client security commission questionnaire. We equated these violations to three cases imposing only two- to three-month suspensions for trust account violations. Cross, 861 N.W.2d at 226-28.[6] We nevertheless suspended Cross for one year based on his additional tax law violations, which were clearly less egregious than Taylor’s. See id. at 228-30. Cross failed to pay taxes or file returns for three years. Id. at 229. Taylor failed to pay taxes or file tax returns for eleven years. Cross’s *386 combined “tax debt exceeded $100,000.” Id. at 215. Taylor’s exceeded $468,000. Cross made no misrepresentations regarding his taxes on his client security questionnaire. Id. at 228 &. n. 4. And most significantly, the majority correctly finds Taylor’s tax noncompliance was willful and dishonest in violation of Iowa Rule of Professional Conduct 32:8.4(c). In sharp contrast, we found no violation of that rule in Cross. Id, at 223 (“[T]he Board has not alleged or presented any evidence that Cross’s improper tax practices were willful, done with an intent to defraud, or otherwise deceitful.”). Taylor presents a decade-long pattern of tax violations not present in Knopf, Schott, or Cross, and unlike those lawyers, Taylor, for three years, violated a court order directing her to file her tax returns and pay her back taxes.
I disagree with the majority’s assertion that “since 2011, we have taken a different approach when it comes to sanctioning attorneys whose violations include failing to file a tax return.”[7] To the contrary, we recently noted that our court previously “increased the sanctions for failure to file income tax returns in order to protect the reputation of the bar.” Iowa Supreme Ct. Att’y Disciplinary Bd. v. Deremiah, 875 N.W.2d 728, 739 (Iowa 2016) (citing Comm. on Prof'l Ethics & Conduct v. Jones, 368 N.W.2d 157, 157 (Iowa 1985) (“[W]e are determined to continue to impose sanctions, and if necessary to end tax violations by members of the profession, to increase the periods of suspension.”)); see also Comm. on Prof'l Ethics & Conduct v. Belay, 420 N.W.2d 783, 784 (Iowa 1988) (“We are committed to imposing increasingly severe suspensions if necessary to end tax violations by members of our profession.”), A pattern of misconduct as shown by Taylor warrants more severe sanctions. See Deremiah, 875 N.W.2d at 736 (“Our cases have often emphasized the pattern of misconduct.”). By escalating sanctions, we “deter other lawyers from committing similar violations.” Id. at 739 (escalating sanctions for domestic abuse). Those remain good reasons for suspending Taylor for at least one year.
Taylor presents no other mitigating circumstances that justify cutting in half the suspension otherwise appropriate for her egregious, prolonged tax law violations. She made business decisions to lower her retainer or hourly fee for some clients and allow payment plans. In my view, that does not equate to the pro bono legal representation or volunteer community service we typically consider as mitigating ethical violations. See Iowa Supreme Ct. Att’y Disciplinary Bd. v. Boles, 808 N.W.2d 431, 442 (Iowa 2012). There, we noted that
Boles has performed extensive court-appointed and pro bono work. He also has compiled an admirable record of public service volunteering to coach more than twenty youth sports teams while serving on nonprofit community boards, mentoring underprivileged children with Wau-kee schools, and raising his own family.
Id. at 434. Similarly, we reduced Schall’s suspension for failure to file tax returns in light of “his eight years of service as a school board member, and his participation in many other significant local and state civic activities.” Schall, 814 N.W.2d at *387 215. Taylor cannot claim equivalent public service in mitigation.
Attorneys are officers of the court sworn to uphold the law. To restate the obvious:
Obedience to the law symbolizes respect for law. To the extent those licensed to operate the law’s machinery knowingly and repeatedly violate essential statutes, there inexorably follows an intensified loss of lay persons’ respect for law. This we can neither condone nor tolerate.
Iversen, 723 N.W.2d at 811 (quoting Comm. on Prof'l Ethics & Conduct v. Bromwell, 221 N.W.2d 777, 778-79 (Iowa 1974)). Maryland’s highest court recently observed, “[P]reserving the public’s confidence in the legal profession is particularly pertinent in eases involving the willful failure to file tax returns.” Att’y Grievance Comm’n of Md. v. Katz, 443 Md. 389, 116 A.3d 999, 1010 (2015) (disbarring attorney who underpaid taxes and failed to timely file returns for fifteen years). As that court elaborated,
An attorney’s willful failure to file income tax returns may seriously impair public confidence in the entire profession. The need, therefore, to maintain public respect for the bar is a vital consideration in the imposition of disciplinary sanctions. The lawyer, after all, is intimately associated with administration of the law and should rightfully be expected to set an example in observing the law. By willfully failing to file his tax returns, a lawyer appears to the public to be placing himself above that law.
Id. (quoting Att’y Grievance Comm’n of Md. v, Walman, 280 Md. 453, 374 A.2d 354, 361 (1977)); see also Fla. Bar v. Erlenbach, 138 So.3d 369, 374 (Fla.2014) (noting lawyers who fail to file tax returns “fail[] to abide by the laws that citizens are required to address each year”). [T]he responsibility for properly filing one’s tax returns is a responsibility that should never be taken lightly by any citizen, especially one who is licensed as an officer of the court.” Disciplinary Counsel v. Large, 122 Ohio St.3d 35, 907 N.E.2d 1162, 1165 (2009) (per curiam) (quoting Toledo Bar Ass’n v. Stichter, 17 Ohio St.3d 248, 478 N.E.2d 1322 (1985) (per curiam)). What we said in Bromwell remains true: There is “no significant moral distinction between willfully cheating a client and willfully cheating the government.” 221 N.W.2d at 780; see also Katz, 116 A.3d at 1013 (holding cheating the government “is equally as reprehensible as cheating a client”).
For these reasons, I would impose a one-year suspension.
ZAGER, J., joins this dissent.

. The motives of the complaining party are irrelevant. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Santiago, 869 N.W.2d 172, 182-83 (Iowa 2015).

. In calibrating the sanction, we distinguished trust account cases imposing one-month suspensions and cited four decisions as "closer parallels” to Cross’s misconduct. Id. at 227 (citing Iowa Supreme Ct. Att’y Disciplinary Bd. v. Ricklefs, 844 N.W.2d 689, 702 (Iowa 2014) (three-month suspension); Iowa Supreme Ct. Att’y Disciplinary Bd. v. Powell, 830 N.W.2d 355, 360 (Iowa 2013) (three-month suspension); Iowa Supreme Ct. Att’y Disciplinary Bd. v. Parrish, 801 N.W.2d 580, 590 (Iowa 2011) (sixty-day suspension)). We also cited a case imposing a six-month suspension for trust account violations, but that attorney had a prior audit and three prior suspensions. Id. at 226-27, 228 (citing Iowa Supreme Ct. Att’y Disciplinary Bd. v. Morris, 847 N.W.2d 428, 436-37 (Iowa 2014)).

. We reiterated that "[i]t is as wrong for a lawyer to cheat the government as it is to cheat a client.” Knopf, 793 N.W.2d at 531 (quoting Iversen, 723 N.W.2d at 810). And, .we observed that we have "imposed a sanction of license suspension from sixty days to three years for an attorney’s failure to file income tax returns.” Id. We again cited Iver-sen with approval when imposing the one-year suspension in Cross, 861 N.W.2d at 228-29.