# IN THE SUPREME COURT OF IOWA

No. 16–0130

Filed November 10, 2016

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**KAREN A. TAYLOR,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The Iowa Supreme Court Disciplinary Board brought a complaint against an attorney alleging she failed to file her federal and state income tax returns. **LICENSE SUSPENDED.**

Tara van Brederode and Susan Wendel, Des Moines, for complainant.

David L. Brown and Alexander E. Wonio of Hansen, McClintock & Riley, Des Moines, for respondent.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against the respondent, Karen A. Taylor, alleging she committed misconduct and violated the Iowa Rules of Professional Conduct and the Iowa Code of Professional Responsibility for Lawyers by failing to file her federal and state income tax returns for tax years 2003 through 2013. Based on the facts stipulated to by the parties, a division of the Grievance Commission of the Supreme Court of Iowa concluded Taylor's conduct violated rules 32:8.4(b) and 32:8.4(c) of the Iowa Rules of Professional Conduct and recommended she be suspended for no more than thirty days.

On our de novo review, we conclude the Board established by a convincing preponderance of the evidence that Taylor violated rules 32:8.4(b) and 32:8.4(c) of the Iowa Rules of Professional Conduct and disciplinary rules 1–102(A)(3), 1–102(A)(4), and 1–102(A)(6) of the Iowa Code of Professional Responsibility for Lawyers. Under the circumstances of this case, we conclude the appropriate sanction is a suspension of Taylor's license to practice law for a minimum of six months.

## I. Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Haskovec,* 869 N.W.2d 554, 557 (Iowa 2015). The Board has the burden to prove an attorney violated a rule of professional conduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Crum,* 861 N.W.2d 595, 599 (Iowa 2015). "A convincing preponderance of the evidence is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt." *Haskovec,* 869 N.W.2d at 557 (quoting *Crum,* 861

N.W.2d at 599). Thus, the burden on the Board is higher than the burden of proof that applies in most civil cases, but less than the burden that applies in cases requiring a party to establish a proposition by clear and convincing evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hedgecoth*, 862 N.W.2d 354, 360 (Iowa 2015). Although we give respectful consideration to the findings, conclusions, and recommendations of the grievance commission in attorney disciplinary proceedings, they do not bind us. *Haskovec*, 869 N.W.2d at 557; *Crum*, 861 N.W.2d at 599; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 844 N.W.2d 111, 113 (Iowa 2014).

When an attorney admits facts alleged by the Board in an answer to a complaint, we deem those facts to be established. *Haskovec*, 869 N.W.2d at 557. Furthermore, when the parties in an attorney disciplinary proceeding stipulate to facts, those factual stipulations are binding on the parties. *Id.* We interpret factual stipulations in light of the surrounding circumstances, the record as a whole, the subject matter they address, and the issues involved. *Id.*

When an attorney stipulates to having violated a rule contained in the Iowa Rules of Professional Conduct, however, that stipulation is not binding on this court. *Id.* at 557, 562. Rather, we will find the attorney violated the Iowa Rules of Professional Conduct only if the record reveals a factual basis for concluding a violation of the rules occurred. *Id.*

## II. Prior Proceedings.

On June 30, 2015, the Board filed a formal complaint against Taylor alleging she violated rules 32:8.4(b) and 32:8.4(c) of the Iowa Rules of Professional Conduct by willfully failing to file her federal and state income tax returns for tax years 2002 through 2007. After Taylor responded to the complaint and provided copies of her tax returns to the

Board, the Board filed an amended complaint alleging she violated rules 32:8.4(b) and 32:8.4(c) of the Iowa Rules of Professional Conduct by willfully failing to file her federal and state income tax returns for tax years 2003 through 2013. The Board subsequently filed a second amended complaint alleging Taylor violated disciplinary rules 1–102(A)(3), 1–102(A)(4), and 1–102(A)(6) of the Iowa Code of Professional Responsibility for Lawyers by failing to file her federal and state income tax returns for tax years 2003 and 2004 and violated rules 32:8.4(b) and 32:8.4(c) of the Iowa Rules of Professional Conduct by failing to file her federal and state income tax returns for tax years 2005 through 2013. In her answer, Taylor admitted every factual allegation the Board made in the second amended complaint.

Thereafter, the parties filed a joint stipulation, which they subsequently amended. *See* Iowa Court Rule 36.16. In the final joint stipulation, the parties stipulated to the relevant facts and agreed that Taylor's failure to file her federal and state income tax returns for tax years 2003 through 2013 violated rules 32:8.4(b) and 32:8.4(c) of the Iowa Rules of Professional Conduct.[1] The final joint stipulation also contained a statement setting forth aggravating and mitigating factors that might influence a determination of the appropriate sanction under the circumstances. The parties agreed to submit the case for determination on the issue of whether any violations occurred based on the final joint stipulation and to brief only the issue of the appropriate sanction.

---

[1]The final joint stipulation did not address whether Taylor's failure to file her federal and state income tax returns for tax years 2003 and 2004 violated disciplinary rules 1–102(A)(3), 1–102(A)(4), and 1–102(A)(6) of the Iowa Code of Professional Responsibility for Lawyers.

After the parties submitted briefs on the question of the appropriate sanction, a division of the grievance commission held a hearing to determine what sanction it would recommend to this court. By the date of the hearing, Taylor had already filed her federal and state income tax returns for tax years 2003 through 2013.

During the hearing, Taylor testified regarding her work and personal history, the circumstances that led to her failure to file her federal and state income tax returns, and the recent efforts she had made to address her outstanding tax liabilities with federal and state authorities. Taylor also expressed remorse for her actions, acknowledged her conduct violated her ethical obligations, and accepted responsibility for her actions without attempting to offer excuses or shift blame to others.

The grievance commission subsequently issued its findings of fact, conclusions of law, and recommendations with respect to the appropriate sanction. The commission concluded Taylor's failure to file her federal and state income tax returns for tax years 2003 through 2013 violated Iowa Rules of Professional Conduct 32:8.4(b) and 32:8.4(c). After considering the facts and circumstances and a number of aggravating and mitigating factors, the commission recommended we suspend Taylor's license to practice law in the state for no more than thirty days. The Board opposed the commission's recommendation, arguing an eighteen-month suspension is a more appropriate sanction.

### III. Findings of Fact.

Based on the joint stipulation of the parties and our review of the record, we make the following findings of fact. Taylor graduated from Drake Law School in 1992, and we admitted her to the Iowa bar in 1995. Taylor opened a law practice with a partner in 1998, and she has

maintained a solo practice in Des Moines since 2000. Taylor currently employs a full-time legal assistant, a part-time bookkeeper, and a part-time receptionist. Additionally, Taylor usually employs an associate attorney, though she did not employ an associate at the time of the hearing before the Board.

Taylor practices primarily family law, assisting clients with divorces and child custody matters as well as protective orders in cases involving domestic violence. Additionally, Taylor represents individuals facing criminal prosecutions and bankruptcy proceedings. Taylor regularly accepts court appointments to represent indigent defendants in criminal matters, and most of her clients facing criminal prosecution are indigent. Taylor makes court appearances nearly every weekday, takes work home nearly every night, and frequently works every day of the week. The clients Taylor assists are located throughout central Iowa, and she regularly appears before the courts in Hardin, Boone, Story, Dallas, Polk, Madison, Warren, Ringgold, and Decatur counties.

Taylor has a significant client base for a sole practitioner and currently has approximately two hundred clients with ongoing matters. Many of Taylor's clients are individuals of modest means, and she charges an affordable hourly rate to ensure their access to legal representation. Taylor performs substantial pro bono legal work on a regular basis and has done so throughout her career. In addition, Taylor regularly permits her low-income clients to pay for her services on a payment plan without interest. For example, one of her clients has been paying her ten dollars per month for approximately eighteen years. Because Taylor does not demand prompt payment for her services from clients who would otherwise have difficulty affording them, she has a significant accounts receivable balance in excess of $200,000.

In 1997, Taylor was married. A few years later, in approximately 2002, her husband stopped earning a regular income. In 2004, the couple believed they did not have the money to pay their income taxes. Consequently, they procrastinated on filing their federal and state income tax returns for tax year 2003. Towards the end of her marriage, finances became a major issue. Taylor and her husband struggled to pay their bills for the next several years. They consistently failed to file their federal and state income tax returns.

In 2010, Taylor filed a petition for dissolution of the marriage. It had been approximately nine years since her husband had earned a regular income, and the couple had failed to file federal and state income tax returns for years. The court dissolved the marriage. The decree entered by the district court upon the dissolution of the marriage ordered Taylor and her former husband to file their outstanding federal and state tax returns separately.

Following the entry of the dissolution decree, Taylor and her former husband shared joint legal custody and joint physical care of their two minor children, and Taylor paid her former husband $657 per month in child support. Though Taylor initially began working with an accountant to file her delinquent tax returns, she ultimately persisted in her failure to file the returns despite the court ordering her to file them in the dissolution decree.

In 2014, Taylor became concerned the relationship between her former husband and his girlfriend had caused his relationship with their children to deteriorate. In August, Taylor informed her former husband that she was contemplating filing a petition to modify the joint physical care award in the dissolution decree. The following day, her former

husband's girlfriend filed a complaint with the Board alleging Taylor had not filed her income tax returns for tax years 2002 through 2007.

Taylor eventually filed a petition seeking modification of the joint physical care award in the dissolution decree. Following a child custody modification hearing, a district court awarded Taylor primary physical care of her minor children. Months later, her former husband began paying her $752 per month in child support. The court of appeals subsequently upheld the district court decision awarding Taylor physical care of the minor children. Thus, at the time of her hearing before the grievance commission, Taylor resided in a rented house in Waukee with her two minor children and an adult son who was in college.

Upon learning the complaint alleging she failed to file her tax returns been filed with the Board, Taylor responded in writing. In the response, Taylor acknowledged she had failed to keep current on filing her federal and state income tax returns, indicated she had already hired an accountant to assist her with preparing the delinquent returns, and anticipated she would file the delinquent returns within thirty days. Though Taylor stated she accepted full responsibility for her actions, she also indicated she believed her former husband's girlfriend filed a complaint against her with the Board in an attempt to destroy her law practice and get even with her for issues related to the custody dispute. Following its investigation, the Board filed a formal complaint against Taylor with the grievance commission on June 30, 2015.

During the course of the proceedings before the grievance commission, Taylor admitted she willfully failed to file her federal and state income tax returns for tax years 2003 through 2013 within the time required by law even though she knew she was legally obligated to do so. For tax years 2003 through 2013 Taylor earned a substantial income.

She also admitted her conduct was not attributable to any physical, mental, or emotional illness, condition, or addiction. Prior to her hearing before the commission, neither federal nor state authorities had charged Taylor with a crime in connection with her failure to file her income tax returns.

By the date of the hearing, Taylor had already filed all her outstanding federal and state income tax returns and entered into negotiations to establish payment schedules for her delinquent back taxes with both federal and state officials. She had also provided documentation to the grievance commission showing she had consistently made monthly payments of back taxes and quarterly payments of front taxes to federal and state tax authorities since she filed her delinquent returns.

We previously disciplined Taylor on two occasions. In 2005, we publicly reprimanded her for neglect of a client. In 2012, we publicly reprimanded her for failing to promptly comply with reasonable client requests for information and misrepresenting the status of a client's appeal. Additionally, we briefly suspended Taylor's license to practice law in 2010, but we lifted the suspension within hours because it had resulted from an administrative error.

## IV. Ethical Violations.

In its findings of fact, conclusions of law, and recommendation, the grievance commission acknowledged the parties stipulated that Taylor had willfully failed to file her federal and state income tax returns for tax years 2003 through 2013 within the time required by law even though she knew she was legally obligated to do so. This factual stipulation is binding on the parties. *Haskovec*, 869 N.W.2d at 657.

The parties also stipulated that Taylor's conduct violated rules 32:8.4(b) and 32:8.4(c) of the Iowa Rules of Professional Conduct. The grievance commission agreed, concluding Taylor's failure to file her federal and state income tax returns for tax years 2003 through 2013 in a timely manner violated both rules 32:8.4(b) and 32:8.4(c) of the Iowa Rules of Professional Conduct.

The Iowa Rules of Professional Conduct replaced the Iowa Code of Professional Responsibility for Lawyers effective July 1, 2005. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barnhill*, 847 N.W.2d 466, 473 (Iowa 2014). Therefore, the Iowa Rules of Professional Conduct exclusively governs attorney disciplinary proceedings with respect to attorney conduct that occurred after that date. *Id.* However, the Iowa Code of Professional Responsibility for Lawyers continues to govern attorney disciplinary proceedings with respect to attorney conduct that occurred prior to July 1, 2005. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelsen*, 807 N.W.2d 259, 260 n.1 (Iowa 2011).

Accordingly, we first address whether Taylor's failure to file her federal and state income tax returns for tax years 2003 and 2004 violated disciplinary rules 1–102(A)(3), 1–102(A)(4), and 1–102(A)(6) of the Iowa Code of Professional Responsibility for Lawyers. *See Hedgecoth*, 862 N.W.2d at 363 (concluding on our de novo review that an attorney violated a rule of professional conduct the Board alleged he violated even though the grievance commission did not specifically address the allegation in its conclusions of law).[2] We then address whether Taylor's

---

[2]We acknowledge the constitutional guarantee of procedural due process requires an attorney charged with an ethical violation in an attorney disciplinary proceeding be given notice of the violation with which he or she is charged sufficient to afford a meaningful opportunity to respond. *In re Ruffalo*, 390 U.S. 544, 552, 88 S. Ct. 1222, 1226, 20 L. Ed. 2d 117, 123 (1968); *Comm. on Prof'l Ethics & Conduct v. Wenger*,

failure to file her federal and state income tax returns for tax years 2005 through 2013 violated rules 32:8.4(b) and 32:8.4(c) of the Iowa Rules of Professional Conduct.

**A. Disciplinary Rules 1–102(A)(3), 1–102(A)(4), and 1–102(A)(6) of the Iowa Code of Professional Responsibility for Lawyers.** As we have previously acknowledged on numerous occasions, when an attorney whose income was sufficient to trigger the requirement of filing income tax returns fails to do so, that failure constitutes misrepresentation of the attorney's income in violation of DR 1–102(A)(4), a deceitful offense involving moral turpitude in violation of DR 1–102(A)(3), and conduct adversely reflecting on his or her fitness to practice law in violation of DR 1–102(A)(6). *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields*, 790 N.W.2d 791, 797 (Iowa 2010); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Runge*, 588 N.W.2d 116, 118 (Iowa 1999). Taylor admits her income in tax years 2003 and 2004 exceeded the threshold triggering the requirement that she file federal and state income tax returns, yet she willfully failed to do so. Therefore, we conclude her failure to file income tax returns for tax years 2003 and 2004 violated disciplinary rules 1–102(A)(3), 1–102(A)(4), and 1–102(A)(6) of the Iowa Code of Professional Responsibility for Lawyers.

---

454 N.W.2d 367, 369 (Iowa 1990). In its second amended complaint, the Board alleged Taylor violated disciplinary rules 1–102(A)(3), 1–102(A)(4), and 1–102(A)(6) of the Iowa Code of Professional Responsibility for Lawyers by failing to file her income tax returns for tax years 2003 and 2004 and violated rules 32:8.4(b) and 32:8.4(c) of the Iowa Rules of Professional Conduct by failing to file her income tax returns for tax years 2005 through 2013. It is therefore evident the notice Taylor received was adequate to afford her a meaningful opportunity to respond to the allegation that her conduct violated both the Iowa Code of Professional Responsibility for Lawyers and the Iowa Rules of Professional Conduct.

**B.  Rule 32:8.4(b) of the Iowa Rules of Professional Conduct.**

Rule 32:8.4(b) of the Iowa Rules of Professional Conduct states that it constitutes professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."  Iowa R. of Prof'l Conduct 32:8.4(b). It is the commission of a criminal act reflecting adversely on a lawyer's fitness to practice law, not the act of getting caught committing a crime, which constitutes a violation of this rule.  *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lustgraaf*, 792 N.W.2d 295, 299 (Iowa 2010).  Thus, an attorney who commits a criminal act reflecting adversely on his or her fitness as a lawyer may be found to have violated rule 32:8.4(b) even if the authorities never charged the attorney with a crime.  *Id.*

No state or federal criminal charges have been filed against Taylor. However, the joint stipulation acknowledges that Taylor willfully failed to file federal and state income tax returns for tax years 2005 through 2013 even though her income during each of those years exceeded the threshold triggering federal and state filing requirements.

In light of this binding factual stipulation, we agree with the grievance commission that Taylor violated rule 32:8.4(b).  By statute, Taylor was required to timely file federal and state income tax returns for tax years 2005 through 2013.  *See* 26 U.S.C. §§ 6012(a)(1)(A), 6017, 6072(a) (2012); Iowa Code §§ 422.5, .13(1), .22(1) (2015).  A willful failure to file an income tax return when one is statutorily required to do so constitutes a criminal offense under federal and state law.  *See* 26 U.S.C. § 7203; Iowa Code § 422.25(5); Iowa Code § 714.8(10).  Furthermore, we have long acknowledged an attorney's failure to file income tax returns in violation of the law reflects adversely on his or her fitness as a lawyer. *Lustgraaf*, 792 N.W.2d at 299.

**C. Rule 32:8.4(c) of the Iowa Rules of Professional Conduct.**

Rule 32:8.4(c) of the Iowa Rules of Professional Conduct indicates that it constitutes professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:84(c). An attorney makes a misrepresentation in violation of rule 32:8.4(c) when he or she willfully fails to file income tax returns despite having earned adequate income to trigger the filing requirement. *Lustgraaf*, 792 N.W.2d at 300. To establish an attorney failed to file his or her income tax returns with the requisite intent to prove a misrepresentation in violation of rule 32:8.4(c), the evidence must indicate the attorney acted willfully, acted with the intent to deceive or defraud, or made false statements in connection with the asserted failure. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cross*, 861 N.W.2d 211, 223 (Iowa 2015); *Lustgraaf*, 792 N.W.2d at 299–300. If an attorney's failure to file his or her income tax returns was merely negligent, that failure does not support the conclusion that the attorney violated rule 32:8.4(c). *See Cross*, 861 N.W.2d at 223; *Lustgraaf*, 792 N.W.2d at 300. To establish a failure to file was willful rather than negligent, "no evil or wicked motive need be shown." *Comm. on Prof'l Ethics & Conduct v. Cook*, 409 N.W.2d 469, 470 (Iowa 1987). Rather, willfulness may be proved by establishing the attorney committed a mere knowing failure to comply with federal or state statutes creating a legal duty. *Cook*, 409 N.W.2d at 470; *State v. Osborn*, 368 N.W.2d 68, 69–70 (Iowa 1985).

The joint stipulation filed by the parties acknowledges Taylor knew she had a legal duty to file federal and state income tax returns each year she failed to do so and knew the deadlines by which she was required to file her tax returns in order to satisfy her legal obligations. It

further states that Taylor's conduct in failing to file her tax returns despite knowing she had a legal duty to do so was voluntary and intentional, not accidental or inadvertent.

Given this binding factual stipulation, we agree with the grievance commission that Taylor's conduct violated rule 32:8.4(c). Taylor intentionally failed to file her income tax returns when she knew she had a legal duty to do so. This constitutes making a misrepresentation for purposes of determining whether she violated rule 32:8.4(c).

### V. Sanction.

"The primary goal of attorney discipline is to protect the public, not to punish the attorney." *Barnhill*, 847 N.W.2d at 487. When considering the appropriate sanction in an attorney disciplinary case, we consider not only the nature of the unprofessional conduct the attorney engaged in but also his or her fitness to continue to practice law and the degree to which the sanction will protect the public, help to uphold public confidence in the judicial system, serve to deter other members of the bar from similar conduct, and help to maintain the reputation of the bar as a whole. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 610 (Iowa 2012). Though there are no standard sanctions for particular types of misconduct, prior cases may be instructive in crafting an appropriate sanction. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 841 N.W.2d 114, 127 (Iowa 2013). Nonetheless, in determining the appropriate discipline in a particular case, we also endeavor to tailor the sanction to the facts and circumstances before us. *Id.*

In prior disciplinary cases involving attorneys who failed to file tax returns, we have imposed sanctions ranging from a public reprimand to suspensions ranging from sixty days to three years. *Lustgraaf*, 792 N.W.2d at 301–02 & n.4. In *Lustgraaf*, after determining the attorney's

failure to file resulted from negligence rather than willful conduct, we publicly sanctioned the attorney after considering mitigating circumstances. *Id.* In contrast, in cases in which we determined an attorney's failure to file was willful, we have imposed suspensions of varying lengths. *Id.*

In many of the cases involving particularly lengthy suspensions, the attorney also engaged in other conduct constituting an independent violation of our ethical rules. For example, in a case in which we concluded an attorney willfully failed to file his tax returns for several years, neglected client matters, made misrepresentations to clients, and failed to keep clients reasonably informed, we suspended the attorney's license for eighteen months, noting his past discipline for similar violations constituted an aggravating circumstance. *Fields*, 790 N.W.2d at 796–98. In another case in which we determined an attorney willfully failed to file his tax returns for three years, comingled business and personal funds with trust account funds, failed to deposit unearned fees and prepaid expenses into a trust account, failed to maintain proper financial records and provide prompt accountings of trust account withdrawals, falsely certified on his client security questionnaire that he had properly handled client funds and trust accounts, knowingly failed to respond to a demand for information from the board, and failed to file employee-payroll-withholding-tax declarations, we suspended the attorney's license for one year. *Cross*, 861 N.W.2d at 218–30.

In the past, most disciplinary cases involving an attorney's failure to file tax returns also involved the attorney making false certifications on his or her annual client security questionnaire in response to a question specifically addressing the filing of tax returns, conduct that amounted to a clear independent violation of our ethical rules. *See*

*Comm. on Prof'l Ethics & Conduct v. Belay*, 420 N.W.2d 783, 784–85 (Iowa 1988) (per curiam)). In part because the client security questionnaires that attorneys in Iowa must annually file no longer address the filing of tax returns, the sanctions we have imposed in attorney disciplinary cases involving failure to file tax returns appear to have gradually become less severe. This makes sense. An attorney who has intentionally made a false certification on a client security questionnaire to conceal his or her failure to file tax returns has a more culpable state of mind than an attorney who has not. This fact is a relevant consideration in crafting an appropriate sanction for the particular case. *See Lustgraaf*, 792 N.W.2d at 299.[3]

As we have acknowledged in the past, when an attorney failed to file tax returns but did not commit a separate violation of our ethical rules by making a false certification on a client security questionnaire, "the sanction imposed should logically be less severe." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Iversen*, 723 N.W.2d 806, 811 (Iowa 2006) (quoting *Belay*, 420 N.W.2d at 785). Similarly, the sanction we impose when an attorney failed to file tax returns but did not commit any independent violations of our ethical rules should logically be less severe than the sanctions we have imposed in similar cases involving other conduct amounting to an independent violation of our rules.

In the past we have suspended the licenses of attorneys for considerable periods for persistently failing to file his or her tax returns. *See, e.g., Iversen*, 723 N.W.2d at 810, 812 (suspending an attorney's license for one year for failing to file tax returns for ten years). However,

---

[3]For this reason, we focus our analysis concerning the sanctions we previously imposed in cases involving similar conduct on cases not involving a false certification concerning the filing of tax returns on the client security questionnaire.

since 2011, we have taken a different approach when it comes to sanctioning attorneys whose violations include failing to file a tax return.

For this reason, we find three recent cases particularly instructive in considering the appropriate sanction in this case. In the first, an attorney failed to file his income tax returns for two years and engaged in conduct prejudicial to the administration of justice by neglecting an appeal that we consequently dismissed. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 529–32 (Iowa 2011). We imposed a sanction of three months in light of various mitigating circumstances, including the fact that the attorney had never been the subject of a complaint to the Board. *Id.* at 532. In the second, an attorney failed to file income tax returns for three years, altered a written arraignment and plea-of-not-guilty form intending to effect an unauthorized waiver of his client's right to a speedy trial, and made false representations when signing the form. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schall*, 814 N.W.2d 210, 213 (Iowa 2012). We suspended the attorney's license to practice law for a minimum of six months. *Id.* at 215. In the third case, we suspended the license of an attorney for a minimum of one year for failing to file and pay his payroll, state, and federal taxes for three years in addition to mismanaging his trust account and making false statements on his client security commission form. *Cross*, 861 N.W.2d at 230.

We now consider the aggravating and mitigating circumstances relevant to our determination of the appropriate sanction for Taylor. On the one hand, the grievance commission noted two aggravating circumstances present in this case. First, Taylor has a prior disciplinary

record.[4]  However, as the commission noted, the fact that the conduct for which Taylor was disciplined in the past is unrelated to the conduct for which she is now being sanctioned somewhat undercuts the significance of her past disciplinary record.  Second, Taylor failed to file her federal and state income tax returns for eleven years.  Our caselaw indicates an attorney's failure to file tax returns for an extended period of time constitutes an aggravating factor counseling in favor of more severe sanction.  *Fields*, 790 N.W.2d at 799.  In a prior case in which we determined an attorney had violated the Iowa Code of Professional Responsibility for Lawyers by failing to file his federal and state income tax returns for nearly ten years, we suspended his license to practice law for at least one year.  *Iversen*, 723 N.W.2d at 810, 812.  In doing so, we noted an "almost routine failure to file tax returns" constitutes a "pattern of conduct justifying an increased sanction."  *Id.* at 810 (first quoting *Cook*, 409 N.W.2d at 469).  Finally, Taylor had a substantial income over this time period that would have allowed her to pay her taxes.

On the other hand, we agree with the grievance commission that numerous mitigating circumstances counsel in favor of a less severe sanction in this case.  First, Taylor acknowledged her misconduct and did not offer excuses or assign blame to others.  When Taylor admitted to the commission that she did not file her tax returns because she did not have the money to pay the tax she owed, she fully acknowledged her financial difficulties and marital problems did not excuse her unacceptable conduct.  And when Taylor acknowledged how her

---

[4]Because the temporary suspension of Taylor's license to practice law in 2010 appears to have resulted from an administrative error, we do not consider it to be an aggravating circumstance counseling in favor of a more severe sanction.  *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 269 (Iowa 2012).

misconduct came to light, she did not attempt to assign blame to her former husband or his girlfriend. The fact that an attorney ultimately took responsibility for his or her actions and admitted to violating his or her ethical obligations constitutes a mitigating circumstance counseling in favor of a less severe sanction. *Cross*, 861 N.W.2d at 230. Similarly, the fact that an attorney has acknowledged the nature of his or her misconduct and has not offered excuses or attempted to assign blame to others constitutes a mitigating circumstance. *Iversen*, 723 N.W.2d at 811.

Second, Taylor expressed remorse and embarrassment for her conduct and demonstrated that she has taken significant steps to pay her outstanding tax obligations. Upon learning of the complaint against her, Taylor immediately prepared and filed her outstanding tax returns and entered into negotiations to establish payment plans that would allow her to pay the taxes she owes. Taylor also provided documentation demonstrating she has regularly made monthly payments of back taxes and quarterly payments of estimated future taxes since her misconduct came to light. Demonstrating the acceptance of responsibility and remorse by taking steps to remedy past misconduct constitutes a mitigating factor in determining the appropriate sanction in an attorney disciplinary proceeding. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cannon*, 821 N.W.2d 873, 882 (Iowa 2012).

Importantly, Taylor provides substantial pro bono legal work to individuals who otherwise could not afford her services and has done so throughout her entire legal career. Taylor also routinely permits low-income clients to pay only what they can afford for her services when they can afford it without charging them interest. An attorney performing community service, doing volunteer work, or providing

pro bono legal services constitutes a mitigating circumstance weighing in favor of a lesser sanction in an attorney disciplinary proceeding. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stoller*, 879 N.W.2d 199, 221 (Iowa 2016). Likewise, an attorney regularly providing legal services to an underserved segment of the community constitutes a significant mitigating circumstance. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Said*, 869 N.W.2d 185, 194 (Iowa 2015).

Finally, we agree with the grievance commission that several additional mitigating circumstances are present in this case. Taylor was cooperative throughout the disciplinary process and testified candidly before the commission. *See Schall*, 814 N.W.2d at 215. She is a well-respected attorney who is sincerely devoted to the profession. *See Iversen*, 723 N.W.2d at 811. And nothing in the record suggests the conduct at issue in this case harmed any of her clients. *See Cross*, 861 N.W.2d at 230.

Given these significant mitigating circumstances, the grievance commission recommended we suspend Taylor's license to practice law for no more than thirty days. The commission indicated that if not for the fact that Taylor failed to file her tax returns over an extended period, it would have recommended a public reprimand rather than a suspension. In contrast, the Board argues a lengthier suspension of eighteen months is appropriate based primarily on the extended period over which Taylor failed to file her tax returns.

We agree with the grievance commission and the Board that a suspension is appropriate in this case because Taylor acted willfully in failing to file her income tax returns. *Lustgraaf*, 792 N.W.2d at 301–02. Because the appropriate sanction in a particular case depends on both the quality and the quantity of the violations at issue in light of the

relevant aggravating and mitigating circumstances, we also acknowledge the numerous mitigating circumstances before us and the fact that Taylor engaged in no additional conduct constituting an independent violation of our ethical rules. Based on these factors, we disagree with the Board that an eighteen-month suspension of Taylor's license to practice law constitutes an appropriate sanction for her conduct.

In determining the appropriate sanction in this case, however, we also find significant the fact that Taylor persisted in failing to file her tax returns despite the court ordering her to do so in the dissolution decree. The act of repeatedly violating a court order demonstrates disrespect for the law even when it does not constitute an independent violation of the Iowa Rules of Professional Conduct. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Axt*, 791 N.W.2d 98, 101 (Iowa 2010); *see also* Iowa R. of Prof'l Conduct 32:8.4(d). We therefore conclude the fact that the misconduct Taylor engaged in involved her repeated disregard of a valid court order constitutes a significant aggravating circumstance not considered by the grievance commission.

We conclude the one-month suspension the grievance commission recommended is an inadequate sanction based on the following significant aggravating circumstances present in this case. The period during which Taylor persisted in failing to file her tax returns far exceeds the period during which the attorney in *Schall* failed to do so. *See Schall*, 814 N.W.2d at 214 (suspending attorney's license for a minimum of six months). Moreover, though only the attorney in *Schall* engaged in additional conduct that clearly constituted an independent violation of our ethical rules, *see id.*, Taylor repeatedly violated a court order when she persisted in her failure to file her tax returns after the court issued the dissolution decree. We also find Taylor's conduct is not as egregious

as the conduct in *Cross*. *Cross* involved trust account violations and misrepresentations on his client security commission form. 861 N.W.2d at 218–30. In *Cross*, we suspended Cross's license for only one year. *Id.* at 230.

Were it not for the numerous mitigating circumstances counseling in favor of a lighter sanction in this case, we would conclude a suspension longer than that we imposed in *Schall* to be appropriate. In light of those mitigating circumstances, however, we conclude a sanction in line with the one we imposed in *Schall* to be appropriate. We therefore conclude suspending Taylor's license to practice law for at least six months is the appropriate sanction for her misconduct.

## VI. Disposition.

We suspend Taylor's license to practice law in Iowa indefinitely with no possibility of reinstatement for six months. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 34.23(3). Taylor must also comply the requirements of Iowa Court Rule 34.24 with respect to the notification of clients and opposing counsel. To establish her eligibility for reinstatement, Taylor must file an application for reinstatement meeting all applicable requirements of Iowa Court Rule 34.25. To establish her eligibility for reinstatement, Taylor must also demonstrate she has made every payment to federal and state tax authorities required of her under the terms of any payment plans in effect as of the date she submits her application. We tax the costs of this action to Taylor pursuant to Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**

All justices concur except Cady, C.J., who concurs specially, and Waterman and Zager, JJ., who dissent.

**CADY**, **Chief Justice (concurring specially).**

I concur in the majority opinion. While our prior disciplinary cases could support a longer period of suspension, the purposes of imposing sanctions in attorney disciplinary cases can be accomplished with the suspension period imposed in this case. Before reinstatement is possible for Taylor, she will be required to maintain her responsibility to pay all back taxes and to establish that she is fit to return to the practice of law.

**WATERMAN**, **Justice (dissenting).**

I respectfully dissent because the majority's six-month suspension is too lenient in light of our precedent. Attorney Taylor willfully failed to pay any self-employment taxes or income taxes or file her state and federal tax returns for *eleven* years. The majority acknowledges without elaboration that "Taylor had a substantial income over this time period that would have allowed her to pay her taxes." Her actual income, of course, is relevant to the sanction. This is not a case where the lawyer failed to realize her income was high enough to require a tax return, or where the lawyer was incapacitated or financially unable to pay. In fact, Taylor's net business income *averaged* $138,000 annually. She knowingly failed to pay tens of thousands of dollars owed to our state and federal governments every one of those years. She candidly admitted in 2015 that she "managed to increase [her] disposable income by thirty or forty percent each year by not paying income tax." Specifically, her tax accountant belatedly determined that during the years 2003 through 2013, she owed state taxes totaling $83,048 and federal taxes totaling $385,025, for a combined total of $468,073 exclusive of interest and penalties.

It is undisputed that Taylor knew throughout that eleven-year period that she was legally required to file tax returns and pay income and self-employment taxes annually, but she failed to do so. She had the ability to pay but chose not to pay anything. She blamed her spouse for their financial troubles late in their marriage, yet her failure to file tax returns or pay income taxes continued another three years *after* the Iowa district court in the dissolution-of-marriage decree ordered her to file her own separate tax returns.

"We have repeatedly held that '[i]t is as wrong for a lawyer to cheat the government as it is for him to cheat a client.'" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields*, 790 N.W.2d 791, 799 (Iowa 2010) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Iversen*, 723 N.W.2d 806, 810 (Iowa 2006)). That admonition is oddly missing from today's majority opinion. We would not hesitate to revoke the license of a lawyer who stole from a client. Taylor, in effect, stole from all Iowans for many years. And she did not self-report or come clean voluntarily; her disciplinary charges and negotiations with the tax authorities were triggered by a complaint from her ex-husband's new girlfriend.[5] Taylor's "misconduct cannot be mitigated by a finding of voluntary disclosure." *Fields*, 790 N.W.2d at 799.

The Board requests an eighteen-month suspension. Our precedent supports a suspension of at least a year. We suspended Fields for eighteen months based on his failure to file tax returns for ten years and other violations. *Id.* at 799–801. We suspended Iversen for one year, noting that his failure to file state or federal tax returns for nearly a decade showed a "pattern of conduct justifying an increased sanction." *Iversen*, 723 N.W.2d at 810–11. Iversen was not charged with any other ethics violations, had no prior disciplinary record, fully cooperated with the attorney disciplinary board, and made no "attempt to shift the blame for his actions elsewhere." *Id.* at 811. Last year, in *Iowa Supreme Court Attorney Disciplinary Board v. Cross*, we imposed a one-year suspension for trust account violations and failing to file tax returns or employment tax declarations for *three* years. 861 N.W.2d 211, 229 (Iowa 2015)

---

[5]The motives of the complaining party are irrelevant. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Santiago*, 869 N.W.2d 172, 182–83 (Iowa 2015).

(noting these tax "violations reflect adversely on Cross's fitness to practice law").

The majority overstates the significance of the 2003 revision to the annual client security questionnaire that deleted the requirement for lawyers to certify they filed tax returns. The purpose of that change was not to make it easier for tax cheats to evade detection. It is true a false certification is an independent ethics violation. Thus we have imposed eighteen-month suspensions in cases involving both a false certification and the failure to file tax returns for four or more years. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Doughty*, 588 N.W.2d 119, 120 (Iowa 1999); *Comm. on Prof'l Ethics & Conduct of Iowa State Bar Ass'n v. Holmes*, 271 N.W.2d 702, 704 (Iowa 1978) (imposing eighteen-month suspension for false certification and failure to file state tax returns for five years and stating "the period of suspension otherwise appropriate is increased in this case because of respondent's false questionnaire responses, which in themselves would warrant disciplinary proceedings . . . , and which we regard as an aggravating factor to be considered"). Iversen made no false certification and truthfully reported his failure to file tax returns, yet we still imposed a one-year suspension. 723 N.W.2d at 811. Unlike Iversen who had a previously unblemished disciplinary record, Taylor has two prior public reprimands. And unlike Iversen who self-reported, Taylor was turned in by a third party. Most importantly, Taylor, for three years, ignored a court order to file her tax returns and pay her back taxes, while Iversen violated no court order. Why is Taylor's suspension six months shorter than Iversen's?

The majority primarily relies on three cases to support its six-month suspension for Taylor: *Iowa Supreme Court Attorney Disciplinary Board v. Knopf*, 793 N.W.2d 525 (Iowa 2011), *Iowa Supreme Court*

*Attorney Disciplinary Board v. Schall*, 814 N.W.2d 210 (Iowa 2012), and *Cross*, 861 N.W.2d at 211. *Knopf* and *Schall* are readily distinguishable, and *Cross* supports a one-year suspension. In *Knopf,* we imposed a three-month suspension when the lawyer neglected one appeal and failed to file his tax returns for only *two* years. 793 N.W.2d at 531–32. We noted in mitigation "health problems surrounding Knopf and his family . . . affected his ability to cope." *Id.* at 531 (noting also he cooperated with the Board, had no prior ethics complaints, and was winding down his law practice). Similarly, in *Schall*, we imposed a six-month suspension for a lawyer who failed to file his tax returns for *three* years, along with several other violations, while noting in mitigation that he "was coping with his own serious health problems and acting as primary caretaker for his wife during her lengthy terminal illness." 814 N.W.2d at 215. Taylor claims no such health problems in mitigation. I see a significant difference between two- or three-year failures to file tax returns due to health problems and Taylor's eleven-year failure without that excuse.

I disagree with the majority's assertion that "Taylor's conduct is not as egregious as the conduct in *Cross*." Cross violated several of our rules governing trust accounts and misrepresented his compliance with trust account requirements on his client security commission questionnaire. We equated these violations to three cases imposing only two to three month suspensions for trust account violations. *Cross*, 861 N.W.2d at 226–28.[6] We nevertheless suspended Cross for one year

---

[6]In calibrating the sanction, we distinguished trust account cases imposing one-month suspensions and cited four decisions as "closer parallels" to Cross's misconduct. *Id.* at 227 (citing *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickleffs,* 844 N.W.2d 689, 702 (Iowa 2014) (three-month suspension); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell,* 830 N.W.2d 355, 360 (Iowa 2013) (three-month suspension); *Iowa Supreme Ct.*

based on his additional tax law violations, which were clearly less egregious than Taylor's. *See id.* at 228–30. Cross failed to pay taxes or file returns for three years. *Id.* at 229. Taylor failed to pay taxes or file tax returns for eleven years. Cross's combined "tax debt exceeded $100,000." *Id.* at 215. Taylor's exceeded $468,000. Cross made no misrepresentations regarding his taxes on his client security questionnaire. *Id.* at 223 & n.4. And most significantly, the majority correctly finds Taylor's tax noncompliance was willful and dishonest in violation of Iowa Rule of Professional Conduct 32:8.4(c). In sharp contrast, we found no violation of that rule in *Cross.* *Id.* at 223 ("[T]he Board has not alleged or presented any evidence that Cross's improper tax practices were willful, done with an intent to defraud, or otherwise deceitful."). Taylor presents a decade-long pattern of tax violations not present in *Knopf,* *Schall,* or *Cross,* and unlike those lawyers, Taylor, for three years, violated a court order directing her to file her tax returns and pay her back taxes.

I disagree with the majority's assertion that "since 2011, we have taken a different approach when it comes to sanctioning attorneys whose violations include failing to file a tax return."[7] To the contrary, we recently noted that our court previously "increased the sanctions for

---

*Att'y Disciplinary Bd. v. Parrish,* 801 N.W.2d 580, 590 (Iowa 2011) (sixty-day suspension)). We also cited a case imposing a six-month suspension for trust account violations, but that attorney had a prior audit and three prior suspensions. *Id.* at 226–27, 228 (citing *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morris,* 847 N.W.2d 428, 436–37 (Iowa 2014)).

[7]We reiterated that "[i]t is as wrong for a lawyer to cheat the government as it is to cheat a client." *Knopf,* 793 N.W.2d at 531 (quoting *Iversen,* 723 N.W.2d at 810). And, we observed that we have "imposed a sanction of license suspension from sixty days to three years for an attorney's failure to file income tax returns." *Id.* We again cited *Iversen* with approval when imposing the one-year suspension in *Cross,* 861 N.W.2d at 228–29.

failure to file income tax returns in order to protect the reputation of the bar." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Deremiah*, 875 N.W.2d 728, 739 (Iowa 2016) (citing *Comm. on Prof'l Ethics & Conduct v. Jones*, 368 N.W.2d 157, 157 (Iowa 1985) ("[W]e are determined to continue to impose sanctions, and if necessary to end tax violations by members of the profession, to increase the periods of suspension.")); *see also Comm. on Prof'l Ethics & Conduct v. Belay*, 420 N.W.2d 783, 784 (Iowa 1988) ("We are committed to imposing increasingly severe suspensions if necessary to end tax violations by members of our profession."). A pattern of misconduct as shown by Taylor warrants more severe sanctions. *See Deremiah*, 875 N.W.2d at 736 ("Our cases have often emphasized the pattern of misconduct."). By escalating sanctions, we "deter other lawyers from committing similar violations." *Id.* at 739 (escalating sanctions for domestic abuse). Those remain good reasons for suspending Taylor for at least one year.

Taylor presents no other mitigating circumstances that justify cutting in half the suspension otherwise appropriate for her egregious, prolonged tax law violations. She made business decisions to lower her retainer or hourly fee for some clients and allow payment plans. In my view, that does not equate to the pro bono legal representation or volunteer community service we typically consider as mitigating ethical violations. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 442 (Iowa 2012). There, we noted that

> Boles has performed extensive court-appointed and pro bono work. He also has compiled an admirable record of public service volunteering to coach more than twenty youth sports teams while serving on nonprofit community boards, mentoring underprivileged children with Waukee schools, and raising his own family.

*Id.* at 434. Similarly, we reduced Schall's suspension for failure to file tax returns in light of "his eight years of service as a school board member, and his participation in many other significant local and state civic activities." *Schall*, 814 N.W.2d at 215. Taylor cannot claim equivalent public service in mitigation.

Attorneys are officers of the court sworn to uphold the law. To restate the obvious:

> Obedience to the law symbolizes respect for law. To the extent those licensed to operate the law's machinery knowingly and repeatedly violate essential statutes, there inexorably follows an intensified loss of lay persons' respect for law. This we can neither condone nor tolerate.

*Iversen*, 723 N.W.2d at 811 (quoting *Comm. on Prof'l Ethics & Conduct v. Bromwell*, 221 N.W.2d 777, 778–79 (Iowa 1974)). Maryland's highest court recently observed, "[P]reserving the public's confidence in the legal profession is particularly pertinent in cases involving the willful failure to file tax returns." *Att'y Grievance Comm'n of Md. v. Katz*, 116 A.3d 999, 1010 (Md. 2015) (disbarring attorney who underpaid taxes and failed to timely file returns for fifteen years). As that court elaborated,

> An attorney's willful failure to file income tax returns may seriously impair public confidence in the entire profession. The need, therefore, to maintain public respect for the bar is a vital consideration in the imposition of disciplinary sanctions. The lawyer, after all, is intimately associated with administration of the law and should rightfully be expected to set an example in observing the law. By willfully failing to file his tax returns, a lawyer appears to the public to be placing himself above that law.

*Id.* (quoting *Att'y Grievance Comm'n of Md. v. Walman*, 374 A.2d 354, 361 (Md. 1977)); *see also Fla. Bar v. Erlenbach*, 138 So. 3d 369, 374 (Fla. 2014) (noting lawyers who fail to file tax returns "fail[] to abide by the laws that citizens are required to address each year"). "[T]he responsibility for properly filing one's tax returns is a responsibility that

should never be taken lightly by any citizen, especially one who is licensed as an officer of the court." *Disciplinary Counsel v. Large*, 907 N.E.2d 1162, 1165 (Ohio 2009) (per curiam) (quoting *Toledo Bar Ass'n v. Stichter*, 478 N.E.2d 1322 (Ohio 1985) (per curiam)).  What we said in *Bromwell* remains true:  There is "no significant moral distinction between willfully cheating a client and willfully cheating the government." 221 N.W.2d at 780; *see also Katz*, 116 A.3d at 1013 (holding cheating the government "is equally as reprehensible as cheating a client").

For these reasons, I would impose a one-year suspension.

Zager, J., joins this dissent.